NATIONAL DISTILLERS PRODUCTS CORP. v. COMPANHIA NACIONAL DE NAVEGACAO et al.

Civ. No. 4512.

United States District Court
E. D. Pennsylvania.

July 31, 1951.

Rawle & Henderson, Philadelphia, Pa., for plaintiff.

Krusen, Evans & Shaw, Philadelphia, Pa., for defendant, Companhia Nacional De Navegacao.

W. Wilson White, T. R. White (of White, Williams & Scott), Philadelphia, Pa., for defendant, Reading Co. .

FOLLMER, District Judge.

This suit involves a claim against the defendant, Reading Company, under the Carmack Amendment of the Interstate Commerce Act for loss by leakage from

twelve shipments of wine carried in twelve railroad cars from Philadelphia, Pennsylvania, to Brooklyn, New York. The bill of lading on which the cars moved contained a standard clause (Section 2(b)) approved by the Interstate Commerce Commission which provided that as a condition precedent to recovery, written claims must be filed with the carrier within nine months after delivery of the property. This bill of lading clause conformed strictly to the terms of the Carmack Amendment, 49 U.S.C.A. § 20(11).

Plaintiff admits that the claim as to five of the cars was filed with the railroad company more than nine months after those cars were delivered at Brooklyn, but denies that the terms of the bill of lading required filing at an earlier date under the special circumstances of the case. It claims that in as much as only one bill of lading[1] was issued for the twelve cars which departed from Philadelphia on different dates over a period of three months between April and June, 1944, it was under no duty to present claims for loss until nine months after the delivery of the last of the twelve cars, although more than nine months had elapsed since the delivery of the first four cars.[2] It contends furthermore that the connected series of shipments were arbitrarily divided into carload lots by the railroad company to suit its own convenience; that it would have preferred to expedite delivery of the entire order of five hundred pipes of wine by having them all transported at one time in one twelve car train; that the movement of the twelve cars was, from the standpoint of the consignee, essentially one shipment and therefore the bill of lading notice clause could only be interpreted as meaning that the claim must be presented within nine months after the last car had been delivered, and that this was done.

On the other hand, Reading Company argues that the shipments in question occurred during war times when it was handling tremendous amounts of exports and imports as expeditiously as possible under the circumstances; that if plaintiff's position were sustained it would completely frustrate the purpose of the limitation of time upon the filing of claims, the purpose of which is to put the carrier upon notice of the claim within a time sufficiently close to the occurrence of the alleged loss to enable complete investigation of the merits of the claim.

For the purpose of simplifying the issues of the case, it was agreed by counsel for all parties that the question of notice of claim, affecting, as above indicated only five of the twelve cars, should be disposed of preliminarily.

The pertinent portion of the bill of lading issued in this case reads as follows: "As a condition precedent to recovery, claims must be filed in writing with the receiving or delivering carrier, or carrier issuing this bill of lading, or carrier on whose line the loss, damage, injury or delay occurred, within nine months after delivery of the property * * *. Where claims are not filed * * * in accordance with the foregoing provisions, no carrier hereunder shall be liable, and such claims will not be paid."

In Georgia, Florida & Alabama Railway Company v. Blish Milling Company, 241 U.S. 190, 36 S.Ct. 541, 544, 60 L.Ed. 948, Justice Hughes, speaking for a unanimous court of the time limitations contained in a bill of lading substantially identical with the one here under consideration and determining if a "claim" as required by the bill of lading had been submitted to the railroad company, declared " * * * the transactions of a railroad company are multitudinous, and are carried on through numerous employees of various grades. Ordinarily the managing officers, and those responsible for the settlement and contest of claims, would be without actual knowledge of the facts of a particular transaction. The purpose of the stipulation is not to escape liability, but to facilitate prompt investigation. And,

1. All of the cars in question were consigned to the same consignee under one straight bill of lading.

2. One claim was eight days late, one twelve days, two twenty-six days, and in the case of the fifth car, no claim was ever filed with any of the carriers.

to this end, it is a precaution of obvious wisdom, and in no respect repugnant to public policy, that the carrier by its contracts should require reasonable notice of all claims against it even with respect to its own operations."

And further, " * * * Granting that the stipulation is applicable and valid, it does not require documents in a particular form. It is addressed to a practical exigency and it is to be construed in a practical way."

It seems to me significant that the court in the Blish case speaks of a "particular transaction" and "to a practical exigency." It is not concerned with the form of the notice so long as there is notice "construed in a practical way" to the railroad company directed to a particular transaction or to a practical exigency and for the obvious purpose of enabling "the railroad to secure a reasonable notice of claims against it so that a prompt investigation can be made." [3]

We are not here concerned with a situation where a consignee might be unaware of a shortage until a final shipment is received. The trouble here was in a leakage of a certain number of pipes in a carload lot and therefore the type of loss that was at the time of delivery immediately brought to the attention of the consignee, and which, in my judgment, the consignee is required to promptly call to the attention of the carrier.

It should be borne in mind that the shipments here involved occurred during war times with all of the incidental stresses and strains that were necessarily and inevitably imposed upon the railroads, involving allocation and availability of its rolling stock; that although we are here dealing with one bill of lading there were in actual fact twelve separate shipments spread over a three month period. If the notice contemplated by the stipulation is to have any practical value in assisting the railroad company in making a prompt investigation, it should apply to each installment shipment. To hold that the no-

tice may be withheld until the shipments have been completed might, in my judgment, render the notice completely abortive.

I therefore hold that as to the five cars in question notice of claim as required by Section 2(b) of the bill of lading was not given the defendant railroad company and therefore recovery as to the said five cars must be disallowed.

3. Minot Beverage Co. v. Minneapolis & St. Louis Ry. Co., D.C.Minn., 65 F.Supp. 293.