AMERICAN ROCK SALT COMPANY, LLC, Plaintiff,

v.

NORFOLK SOUTHERN CORPORA-TION, Norfolk Southern Rail Way Company, Defendant.

No. 00–CV–6534.

United States District Court, W.D. New York.

Feb. 7, 2005.

Paul J. Yesawich, III, Harris Beach LLP, Pittsford, NY, for Plaintiff.

George S. Bobnak, Hoyle, Morris & Kerr, LLP, Paul D. Keenan, Jonathan F.

Ball, Janssen Keenan & Ciardi P.C., Philadelphia, PA, Robert S. Attardo, Woods Oviatt Gilman LLP, Rochester, NY, for Defendants.

## DECISION AND ORDER

LARIMER, District Judge.

Plaintiff, American Rock Salt Company, LLC ("ARSCO"), commenced this action seeking damages from defendants, Norfolk Southern Corporation ("NSC") and Norfolk Southern Railway Company ("NSR"), arising from defendants' alleged breach of certain contractual and statutory duties with respect to a transportation contract between ARSCO and NSR. Defendants have moved for summary judgment dismissing two of plaintiff's three causes of action, and dismissing part of the third cause of action as time-barred. Defendants also contend that some of the types of damages sought by plaintiff are not recoverable as a matter of law.

## BACKGROUND

Many of the relevant facts of this case have been set forth in a prior decision of this Court, *American Rock Salt Co. LLC v. Norfolk Southern Corp.*, 180 F.Supp.2d 420 (W.D.N.Y.2001), familiarity with which is assumed, and will not be repeated here. In short, ARSCO is a limited liability company engaged in the business of mining, producing, and selling rock salt in the Northeastern United States. Prior to June 1999, ARSCO had a transportation contract with Consolidated Rail Corporation, Inc. ("Conrail"), pursuant to which Conrail agreed to transport ARSCO's products by rail from certain points of origin. In the Spring of 1997, however, Conrail's assets were acquired by NSC and CSX, Inc. NSC is a Virginia corporation that owns NSR, a rail carrier providing rail transportation and distribution services.

NSC and CSX did not actually begin operation of the former Conrail system until June 1, 1999. On that date, NSC and NSR assumed responsibility for providing rail service to ARSCO along former Conrail routes. Accordingly, on June 8, 1999, ARSCO and NSR entered into a contract ("the contract") for the provision of transportation services. NSC was not a signatory to the contract.

The complaint alleges that contrary to NSC's assurances that there would be a smooth transition from Conrail to NSR, and that the Conrail acquisition would not cause any disruption of rail service, ARSCO began to experience significant delays and other service problems in connection with the shipment of its deicing salt after NSR began operating on the former Conrail lines. ARSCO alleges that these delays caused it to incur various damages, including expenses attributable to additional days of railroad car rental, and the cost of shipping salt by truck when rail service was unacceptably delayed. ARSCO also claims to have lost business and profits as a result of its inability to make deliveries on time.

Based upon these allegations, plaintiff asserts three causes of action. The first alleges that defendants have breached the contract by failing to provide services and deliver ARSCO's products in a timely manner. The second cause of action alleges that defendants' failure to provide timely transportation upon reasonable request constitutes a breach of their obligations as a common carrier under 49 U.S.C. §§ 11101(a) and 11121(a)(1). The third cause of action alleges that defendants have failed to deliver ARSCO's goods with reasonable dispatch, in violation of 49 U.S.C. § 11706 (also known as the "Carmack Amendment") and 49 C.F.R. § 1035(b)(2). Plaintiff seeks compensato-

ry damages, which are alleged to exceed $700,000, and costs and attorney's fees.

## DISCUSSION

### I. Plaintiff's First Two Claims Are Preempted by the Carmack Amendment

■■■ Defendants contend that the first two causes of action are preempted by the Carmack Amendment to the Interstate Commerce Act, 49 U.S.C. § 11706, which provides for liability of rail carriers for loss of, or injury to property that it has received for transportation. "The purpose of the Carmack Amendment was to relieve shippers of the burden of searching out a particular negligent carrier from among the often numerous carriers handling an interstate shipment of goods." *Reider v. Thompson*, 339 U.S. 113, 119, 70 S.Ct. 499, 94 L.Ed. 698 (1950).[1]

■■ Where it applies, the Carmack Amendment provides the exclusive remedy for a shipper to recover damages from a carrier for freight loss or damage incurred during shipment. *See Cleveland v. Beltman N. Am. Co.*, 30 F.3d 373, 380–81 (2d Cir.1994), *cert. denied*, 513 U.S. 1110, 115 S.Ct. 901, 130 L.Ed.2d 785 (1995). Defendants contend that it does apply here, and that plaintiff's first two claims are therefore preempted. *See Project Hope v. M/V IBN SINA*, 250 F.3d 67, 73 n. 6 (2d Cir. 2001) (Carmack Amendment "preempt[s][the] shipper's state and common law claims against a carrier for loss or damage to goods during shipment") (quoting *Ward v. Allied Van Lines, Inc.*, 231 F.3d 135, 138 (4th Cir.2000)).

■■ The Carmack Amendment does not necessarily apply to rail shipments pursuant to a contract, however. Section 10709 of Title 49, which permits rail carriers to enter into contracts for rail service, states that a "party to a contract entered into under this section shall have no duty in connection with services provided under such contract other than those duties specified by the terms of the contract." 49 U.S.C. § 10709(b). That section also provides that a "contract that is authorized by this section, and transportation under such contract, shall not be subject to this part," *i.e.*, 49 U.S.C. § 10101 *et seq.*, and that "[t]he exclusive remedy for any alleged breach of a contract entered into under this section shall be an action in an appropriate State court or United States district court, unless the parties otherwise agree."

Contracts entered into pursuant to § 10709, then, are not subject to the Carmack Amendment. *See Tokio Marine and Fire Ins. Co. v. Mitsui O.S.K. Lines, Ltd.*, No. CV 02–3617, 2003 WL 23181013, at *1 (C.D.Cal. June 27, 2003) ("transportation undertaken pursuant to a contract entered into under § 10709(a) is not subject to Carmack"); *Gateway, Inc. v. Burlington Northern and Santa Fe Ry. Co.*, No. 01 C 9482, 2002 WL 1822919, at *2 (N.D.Ill. Aug. 8, 2002) ("Any liability for loss under such a contract flows directly from the terms of the contract and not the Carmack Amendment, which no longer governs the relationship"); *see also Tamini Trasformatori S.R.L. v. Union Pacific R.R.*, 2003 WL 135722, at *7 (S.D.N.Y. Jan. 17, 2003) ("the purpose of § 10709 is to allow parties the ability to alter federal mandates, or to avoid federal control and oversight over

---

1. Although the statute refers to "actual loss [of] or injury to ... property," 49 U.S.C. § 11706(a), the parties do not dispute that the Carmack Amendment applies to claims for losses due to delay in shipping. *See New York, Philadelphia & Norfolk R.R. v. Peninsula*

*Exchange*, 240 U.S. 34, 38–39, 36 S.Ct. 230, 60 L.Ed. 511 (1916); *Union Pacific R.R. Co. v. Coast Packing Co.*, 236 F.Supp.2d 1130, 1136 (C.D.Cal.2002); *Richter v. North American Van Lines, Inc.*, 110 F.Supp.2d 406, 412 (D.Md.2000).

rail contracts") (quoting *Dow Chem. Co. v. Union Pacific Corp.,* 8 F.Supp.2d 940, 941 (S.D.Tex.1998)).

The contract in this case does state that it "is made pursuant to 49 U.S.C. § 10709...." Defendants' Motion for Summary Judgment (Dkt.# 48), Ex. A at 1. While at first blush that might seem to end the matter, the issue is complicated by another provision in § 6 of the contract stating that "[e]xcept to the extent inconsistent with any provisions herein, shipments made under the terms of this Contract are subject to all ... government ... rules, regulations, and provisions ... covering ... freight loss and damage claims ... that would apply if this Contract were not in effect." *Id.* at 2. Defendants contend that the contract itself thus provides that freight loss and damage claims are not governed by the contract, but by whatever statutes or regulations would control if the contract did not exist; in other words, the Carmack Amendment.

Plaintiff responds that it makes no sense to think that parties would enter into a contract that provides for its own preemption by statute. Plaintiff interprets § 6 to mean that the parties simply intended to import certain statutory duties into the contract, but to preserve a cause of action for breach of contract if those duties are breached.

While the contract may not be a model of draftsmanship, I believe that when read as a whole, its various provisions can be harmonized, and their meaning determined as a matter of law. *See Bourne v. Walt Disney Co.,* 68 F.3d 621, 629 (2d Cir.1995) (where contract language is "unambiguous and conveys a definite meaning," court may decide its meaning as a matter of law) (internal quotation marks and citations omitted), *cert. denied,* 517 U.S. 1240, 116 S.Ct. 1890, 135 L.Ed.2d 184 (1996). I also conclude that under the terms of the con-

tract, claims for property damage, including claims arising out of shipment delays, are governed by the Carmack Amendment.

The contract deals with a number of matters, and imposes various duties on the parties. Section 3, for instance, provides that ARSCO will provide a certain minimum volume of salt to be shipped. Section 4 provides for liquidated damages in the event that ARSCO fails to meet that minimum volume requirement. Section 7 permits either party to terminate the contract if certain events happen.

As stated, § 6 deals, in part, with "freight loss and damage claims...." Specifically, it provides that such claims will be subject to whatever rules or regulations would apply if the contract were not in effect.

The only logical interpretation of that provision is that, while the parties' other obligations are governed by the terms of the contract, claims for freight loss or damage are to be dealt with as if the contract did not exist. That means that plaintiff's claims here are governed by the Carmack Amendment, which provides plaintiff's sole remedy for its claims. *Morris v. Covan World Wide Moving, Inc.,* 144 F.3d 377, 382 (5th Cir.1998); *Cleveland,* 30 F.3d at 380–81.

Although, as plaintiff points out, § 10 of the contract provides that "Virginia law shall govern the interpretation and performance of this Contract," it goes on to say that Virginia law governs "except to the extent otherwise provided herein." Section 6, of course, does "otherwise provide[ ]" that claims for freight loss and damage will be treated as if the contract were not in effect. Those claims are therefore governed by the Carmack Amendment, which, as explained, covers losses caused by delays in shipping.

■ It is true that § 6 of the contract also states that government rules, regulations, etc. will apply to freight loss and damage claims "[e]xcept to the extent inconsistent with any provisions herein. . . ." As stated, the contract's draftsmanship leaves something to be desired, and this abundance of "except to the extent . . ." clauses is one example. It is, however, "a fundamental rule of contract construction that 'specific terms and exact terms are given greater weight than general language.'" *Aramony v. United Way of America*, 254 F.3d 403, 413 (2d Cir.2001) (quoting Restatement (Second) of Contracts § 203(c) (1981)).

Here, § 10 provides that, in general, Virginia law governs the interpretation of the contract, whereas § 6 deals specifically with claims for freight loss and damage. I therefore conclude that the most sensible construction of the contract is that claims such as those presented in this case are governed not by Virginia law, but by the Carmack Amendment.

■ I also find that the Carmack Amendment preempts both plaintiff's state law claims, *see Project Hope*, 250 F.3d at 73 n. 6, and its claims under 49 U.S.C. §§ 11101 and 11121, which impose certain duties on rail carriers in the performance of rail transportation or service. To say, as many cases have, that the Carmack

Amendment is the "sole" or "exclusive" remedy for freight loss or damage claims means just that. No other remedies, under state or federal law, exist for such claims. *See Morris*, 144 F.3d at 382 (federal common law remedies are preempted by Carmack Amendment, which is "is the shipper's sole remedy" in actions seeking damages for the loss of property shipped in interstate commerce by a common carrier under a receipt or bill of lading); *Cleveland*, 30 F.3d at 377 (stating that "the question we must decide is whether Congress has broadly occupied the entire field of interstate shipping to the exclusion of *any* other law and, in particular in this case, federal common law," and answering that question in the affirmative) (emphasis added).[2]

## II. Plaintiff's Remaining Claims Are Partially Time-barred

■ Defendants also contend that plaintiff's claims under the third cause of action are partially time-barred. The basis for that contention is that § 6 of the parties' contract expressly incorporates the terms of the Uniform Straight Bill of Lading ("USBL"), which provides that

[a]s a condition precedent to recovery, claims must be filed in writing with the receiving or delivering carrier, or carrier issuing this bill of lading, or carrier on

---

**2.** There seems to be little authority dealing directly with the issue of whether the Carmack Amendment preempts other federal *statutory* claims. I note, however, that in *Rymes Heating Oils, Inc. v. Springfield Terminal Ry. Co.*, 358 F.3d 82 (1st Cir.2004), the plaintiff shipper alleged that the defendant railway had violated § 11101 by misrepresenting that it had exclusive trackage rights to a certain track, in violation of an earlier order of the Surface Transportation Board setting forth trackage rights. The shipper sued the railway under § 11704(b), which provides an action for damages caused by a violation of the Interstate Commerce Act. Discussing

§ 11704(b), the court stated that that statute is typically "invoked in cases in which a shipper complains that rates charged by the railroads are unjust and unreasonable and seeks reimbursement . . . of unlawful transportation charges," whereas "where the claim for damages is for actual *loss or injury to the property* caused by the carrier, it is usually brought under the Carmack Amendment. . . ." *Id.* at 89 (emphasis added). At any rate, since the law in this circuit is that the Carmack Amendment provides the exclusive remedy for property damage or loss, I believe that it necessarily preempts *any* other claims, federal or state, for such loss.

whose line the loss, damage, injury or delay occurred, within nine months after delivery of the property ... or, in case of failure to make delivery, then within nine months after a reasonable time for delivery has elapsed....

49 C.F.R. § 1035.2, App. B, § 2(b).

· Defendants contend that ARSCO did not file a written claim (which set forth shipments as far back as June 11, 1999, *see* Dkt. # 48, Ex. C) until July 21, 2000. Therefore, according to defendants, any claims arising out of deliveries that occurred more than nine months prior to that date, *i.e.,* October 21, 1999, are time-barred.[3]

Plaintiff responds that the nine-month period does not apply to each individual shipment here because the parties' agreement was an "output contract" that called for NSR to deliver 95% of ARSCO's total shipments of salt during the contract period of June 1999 to May 31, 2001. *See* Dkt. # 48, Ex. A at 4. Thus, plaintiff contends, ARSCO could not have known whether NSR would fulfill its contractual obligations until the end of the contract period, giving ARSCO nine months from May 31, 2001 to file a claim.

Plaintiff also argues that it did put defendants on notice as early as August 1999 that it was asserting a claim against them. In support of that assertion, plaintiff relies on a letter dated August 4, 1999 from ARSCO's distribution manager, Daniel Eagan, reciting various "problems with Norfolk Southern" and stating that "American Rock Salt *will* file claim against The Nor-

folk Southern for any loss it incurs as a result of the near total melt down of the northeast rail system operating by the NS." Plaintiff's Rule 56 Statement (Dkt.# 53), Ex. B.[4] In addition, in a letter dated September 24, 1999, Eagan informed one John Riley at NSC that "in light of the ongoing service problems being experienced in the Northeast as a direct result of your company's merger with Conrail, The American Rock Salt Co., LLC will be filing a claim with The Norfolk Southern for *all costs related to the above mentioned service problems.*" The letter went on to state that ARSCO's "claim will be filed as soon as service returns to acceptable levels and we can compute the total damages incurred by our company." Dkt. # 53, Ex. C.

I am not persuaded by these arguments, and conclude instead that plaintiff can seek to recover damages only for shipments delivered within nine months prior to AR-SCO's filing of its claim in July 2000. For one thing, the relevant case law makes clear that ARSCO's August and September letters to NSC could not have satisfied the written-notice requirement. For example, in *Pathway Bellows, Inc. v. Blanchette,* 630 F.2d 900 (2d Cir.1980), *cert. denied,* 450 U.S. 915, 101 S.Ct. 1357, 67 L.Ed.2d 340 (1981), the Second Circuit held that a shipper's claim against a railroad for damaged cargo was not timely filed where the shipper's letter setting forth the claim was not received by the railroad until one day after the nine-month claim period had expired. In so holding,

---

**3.** ARSCO's claim is dated July 14, 2000, although defendants contend that NSC did not receive it until July 21. Plaintiff does not appear to dispute that contention, and July 21, 2000 is therefore the controlling date. *See Pathway Bellows, Inc. v. Blanchette,* 630 F.2d 900, 902 (2d Cir.1980) ("relevant authority is uniformly to the effect that a paper will not be considered 'filed' until it has been

delivered to and received by the party with whom it is to be filed"), *cert. denied,* 450 U.S. 915, 101 S.Ct. 1357, 67 L.Ed.2d 340 (1981).

**4.** The letter is addressed to Ken Brammer, whose title is not stated, but there is no dispute that the letter was sent to someone at either NSR or NSC.

the court agreed with the district court that an earlier letter from the shipper that was sent during the nine-month period was inadequate to constitute a "claim" because it failed to assert that the railroad was liable for any loss, and it failed to claim a specified or ascertainable amount of money as damages. *Id.* at 903–04. *See also Allianz–Ultramar Cia, Brasileira De Seguros v. Norfolk and Western Ry. Co.,* 668 F.Supp. 518, 519–20 (E.D.Va.1987) ("By the great weight of authority, compliance with the written notice requirement of section 2(b) of the bill of lading is mandatory, and verbal notice and even actual notice on the part of the carrier's employees will not suffice").

On their face, ARSCO's letters did not constitute a "claim." Rather, they stated that "American Rock Salt *will* file [a] claim" and "will be filing a claim," and that ARSCO's "claim will be filed" at some unspecified later date. They did not identify specific delayed shipments, nor did they state any particular amount of damages incurred by ARSCO. *See* 49 C.F.R. § 1005.2(b) (notice must be in writing and (1) contain sufficient facts to identify the shipment, (2) assert liability for damages against the carrier, and (3) make a claim for a specified and determinable amount of money); *Consolidated Rail Corp. v. Primary Industries Corp.,* 868 F.Supp. 566, 578 (S.D.N.Y.1994) ("although arguably the [shipper's] letters assert liability and identify the shipments, they cannot constitute a claim as required under the Uniform Straight Bill of Lading since none of them specify a determinable amount of damages").

▮ I am also not persuaded that ARSCO should be excused from having filed an earlier claim because this was an "output contract." Although the case law on this subject is not extensive, the courts that have addressed the issue have held that "[t]he nine month period for filing claims applies to each individual shipment even where, as here, the parties engage in a series of shipments." *Westhemeco Ltd. v. New Hampshire Ins. Co.,* 484 F.Supp. 1158, 1162 (S.D.N.Y.1980). Similarly, in *National Distillers Products Corp. v. Companhia Nacional De Navegacao,* 99 F.Supp. 458, 460 (E.D.Pa.1951), the court stated that "[i]f the notice [of claim] is to have any practical value in assisting the railroad company in making a prompt investigation, it should apply to each installment shipment. To hold that the notice may be withheld until the shipments have been completed might, in my judgment, render the notice completely abortive."

*C.H. Robinson Co. v. Paris & Sons, Inc.,* 180 F.Supp.2d 1002 (N.D.Iowa 2001), relied on by plaintiff, is inapposite. Although the court in that case did "assume," for purposes of a motion to dismiss under Rule 12(b)(6), that the plaintiff's claim accrued on the date of the last delivery, *id.* at 1009, that case did not involve a claim against a shipper for property damage, but a claim *by* a shipper against a consignor for unpaid freight charges. The claim was brought under 49 C.F.R. § 1035, App. B, § 7, which deals with freight charges, and which contains no language like that found in § 2(b), making the filing of a claim within nine months after delivery a condition precedent to recovery.[5] The other case cited by plaintiff, *Baker v. Chamberlain Mfg. Corp.,* 356 F.Supp. 1314 (D.C.Ill. 1973), is equally inapposite, as it involves when a shipper's claim for demurrage charges accrues when the parties utilize a "monthly average demurrage plan."

5. The court also stated that "the outcome of this ruling would not change were the court to address each individual shipment separately," so it does not appear that the court definitively ruled that the shipper's claim accrued on the date of the last delivery in any event.

Plaintiff's reliance on footnote 10 of *Pathway Bellows* is equally misplaced. There, the Second Circuit stated that "if Pathway Bellows could not, in the exercise of reasonable diligence, have ascertained the extent of its loss within the 9 month claim filing period, untimely filing of a *completed* claim might be viewed as excusable." 630 F.2d at 905 (emphasis added). In this case, though, ARSCO did not file *any* claim until July 2000. Even if ARSCO could not have known the full extent of its damages earlier, it has offered no explanation why it could not have at least filed a partially completed claim sooner, setting forth the shipments in question, and supplemented the claim later when ARSCO became able to calculate its damages precisely. Furthermore, plaintiff's contention that it could not have ascertained its damages until the contract period ended on May 31, 2001, is belied by the fact that it did file a claim roughly ten months earlier.

Finally, I disagree with plaintiff's contention that the adoption of defendants' position on this issue means that ARSCO would have had to file hundreds of claims: one claim for each delayed shipment. ARSCO could have done exactly what it did here-file one claim listing the various shipments in question-only sooner. As additional delays occurred, similar, additional claims could have been filed as necessary to protect ARSCO's right to seek damages arising from those delays.

### III. Claim for Trucking Costs

Plaintiff alleges that due to NSR's delays in shipping, ARSCO was forced to ship some of its salt to its customers by truck. Plaintiff seeks to recover damages for the costs that it incurred in doing so.

Defendants contend that such damages are not recoverable. Defendants argue that since ARSCO never tendered those shipments of salt to NSR for rail transport, defendants cannot have breached their contractual or statutory duties as to that salt. ARSCO responds that it contracted for truck delivery of some salt in an effort to mitigate its damages, and that such damages are recoverable.

I do not believe that I can resolve this issue on the record before me, and that a determination of whether plaintiff can recover these damages should await trial. Specifically, it is not clear at this point whether ARSCO acted reasonably in shipping this salt by truck without even attempting to tender it to NSR for rail transport, or whether it was obvious at that time that NSR could not or would not have shipped it in a timely manner had ARSCO done so.

### CONCLUSION

Defendants' motion for summary judgment (Dkt.# 48) is granted in part. Plaintiff's first and second causes of action are dismissed. Plaintiff's third cause of action is dismissed to the extent that plaintiff seeks damages for shipments delivered prior to October 21, 1999. In all other respects, defendants' motion is denied.

IT IS SO ORDERED.