**SOMPO JAPAN INSURANCE COMPANY OF AMERICA and Sompo Japan Insurance, Inc., Plaintiffs,**

v.

**NORFOLK SOUTHERN RAILWAY COMPANY et al., Defendants.**

**No. 07 Civ. 2735 (DC).**

United States District Court, S.D. New York.

May 15, 2008.

Maloof Brown & Eagan LLC by David T. Maloof, Esq., Thomas M. Eagan, Esq., Rye, NY, for Plaintiffs.

Keenan Cohen & Howard P.C. by Charles L. Howard, Esq., Jenkintown, PA, and Gutterman & Associates by Barry N. Gutterman, Esq., New York, NY, for Defendants.

### *MEMORANDUM AND ORDER*

CHIN, District Judge.

Defendants Norfolk Southern Railway Company and Kansas City Railway Company move for reconsideration of the Court's opinion (the "Opinion") dated March 20, 2008 granting the motion of plaintiffs Sompo Japan Insurance Company of America and Sompo Japan Insurance, Inc. (together, "Sompo") for partial summary judgment. *See Sompo Japan Ins. Co. v. Norfolk S. Rwy. Co.*, 540 F.Supp.2d 486 (S.D.N.Y.2008). For the reasons set forth in the Opinion, the motion for reconsideration is denied. I add only the following:

■ The big picture is this: plaintiffs' insureds arranged to ship their goods from Asia to Georgia; defendants were hired (by intermediate shipping companies) to transport the goods for the rail portion of the trip; and defendants allegedly failed to meet their obligation to deliver the goods in good condition because their train derailed in Texas, damaging the cargo aboard. The question presented is whether plaintiffs may seek to recover the full value of the insured cargo as opposed to a contractually limited amount.

This seemingly simple situation is complicated by an array of provisions in the various contracts among the railroads, shipping companies, and insureds and by an array of provisions in the statutory and regulatory scheme governing railroads. In my Opinion, I ruled as follows:

● The Carmack Amendment provides that a rail carrier is liable for the actual damage to property it transports by rail, 49 U.S.C. § 11706(a), and it specifically covers "the inland [rail] leg of an overseas shipment conducted under a single 'through' bill of lading." *Neptune Orient Lines, Ltd. v. Burlington N. & Santa Fe Ry. Co.*, 213 F.3d 1118, 1119 (9th Cir.2000).

● Section 10502(e) of Title 49 of the United States Code permits carriers to contract out of Carmack's provisions in whole or in part. *See Sompo Japan Ins. Co. of Am. v. Union Pac. R.R. Co.*, 456 F.3d 54, 59–60 (2d Cir.2006).

● To contract out of Carmack, however, rail carriers must offer the shipper the option of full Carmack liability coverage. *Sompo*, 456 F.3d at 60. If the carrier fails to offer the shipper this option, the shipper may sue the carrier under Carmack. *Id.*

● Contracts entered into pursuant to 49 U.S.C. § 10709, however, are not subject to Carmack, and thus carriers entering into § 10709 contracts need not initially offer full Carmack liability to limit their liability. *See, e.g., Am. Rock Salt Co. v. Norfolk S. Corp.*, 387 F.Supp.2d 197, 200 (W.D.N.Y.2005).

Here, defendants concede that no offer of full Carmack liability was made to plaintiffs' insureds. (Tr. 31–32). Hence, the principal issue is whether the contracts in question, which limit defendants' liability for incidents such as derailments, were entered into pursuant to § 10709. The key agreements, according to defendants, are the Intermodal Transportation Agreements (the "ITAs"). (Defs.' Recons. Mem. at 4, 5, 6).

I held that the ITAs were not § 10709 contracts for the following reasons:

● The ITAs do not state on their face that they were entered into pursuant to § 10709.

● Defendants have offered no evidence that the contracts were entered into pursuant to § 10709.

• Defendants have offered no evidence that there was a meeting of the minds between the parties that the ITAs were § 10709 contracts.

• The prior regulations required an explicit statement that a contract was governed by § 10709.

• Norfolk Southern Railway and other rail carriers have included such an explicit statement in ITAs in the past when they intended a contract to be governed by § 10709.[1]

In their motion for reconsideration, defendants have not persuaded me that any of these rulings are incorrect, or that I overlooked any authority or factual argument. To the contrary, defendants arguments are meritless and repetitive.

■■■ The Court reminds defendants that reconsideration is " 'an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources.' " *Taggart v. Moody's Investors Serv.*, 06 Civ. 3388(PKC), 2007 WL 2809846, at *1 (S.D.N.Y. Sept. 26, 2007) (quoting *In re Health Mgmt. Sys. Inc. Sec. Litig.*, 113 F.Supp.2d 613, 614 (S.D.N.Y.2000)). The standard for granting a motion for reconsideration "is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp. Inc.*, 70 F.3d 255, 257 (2d Cir.1995). Defendants have not met this standard. For example:

• Defendants complain that plaintiffs moved for partial summary judgment before any discovery had been taken. (Defs.' Recons. Mem. at 2). In opposing plaintiffs' motion, however, defendants did not make this argument, nor did they submit an affidavit pursuant to Fed.R.Civ.P. 56(f) identifying the discovery they wished to take.

• Defendants contend that the Opinion states the facts presented from plaintiffs' perspective (Defs.' Recons. Mem. at 4), but defendants have never identified any triable issues of fact. On their motion for reconsideration, they still do not identify any genuine disputed issues of fact with respect to the limitation of liability issue.

• Defendants complain that the Court "inexplicably" referred to the waybills in the Opinion, noting that they are merely internal documents. (*Id.* at 6). While the Court mentioned the waybills in the course of discussing all the documents, the Court's analysis relied principally on the ITAs. The Court referenced the waybills chiefly to describe the step-by-step contractual chain at issue in this case, and to emphasize that the required Carmack liability offer was not made in any of those linked contracts. Furthermore, the Second Circuit examined waybills in *Sompo*, holding that "Carmack applies to the domestic rail portion of an international shipment originating in a foreign country and traveling under a through bill of lading, even where the parties have extended COGSA's liability provisions to domestic rail carriers." *Sompo*, 456 F.3d at 75.

• Defendants argue that the Court held that § 10709 contracts "must affirmatively recite the statutory section in writing, in essence overrid[ing] Congress' amendment in 1995, and reinstat[ing] its original terms." (Defs.' Recons. Mem. at 7). I did not go that far. I merely held that the

---

1. I also held that, even assuming the ITAs were § 10709 contracts, contracts covering the rail leg of a continuous intermodal movement must offer full Carmack liability. This is an additional and alternative ground for holding that plaintiffs are not limited in their recovery.

absence of a reference to § 10709 was one consideration, and surely the presence or absence of such an explicit reference is relevant. If the parties to a contract actually intended their agreement to be governed by § 10709, it would take no effort to include such a reference. Here, in addition to the absence of such a reference, I relied also on the absence of any indication that there was a meeting of the minds that § 10709 applied.

● Defendants argue, as they have previously, that

[b]ased upon the plain language of [§§ 10102(1), (5), (7), and (9) and 10501], the characteristics of a Section 10709(a) rail transportation contract are: (i) an agreement to provide specified services, (ii) to which one or more interstate rail carriers are parties and (iii) to which one or more purchasers of rail services are parties, (iv) under specified rates and (v) under specified conditions.

(*Id.* at 12–13). This definition is so broad that it would swallow up virtually every rail carriage arrangement. The definition, standing alone, simply does not provide any concrete basis for distinguishing between a contract entered into under § 10709 and one that is not. As the Opinion emphasizes, statutory provisions should not be read in a vacuum.

██ ● Defendants argue that the Staggers Rail Act created two types of rail rates—"public (both regulated and exempt) and private contract" (*id.* at 9)—and that the Court wrongly categorizes the ITAs as exempt rather than private contract. Defendants' argument fails for the same reasons it failed previously. I add only that, first, this argument oversimplifies the issue. The Opinion concluded "that rail contracts *for the movement of cargo traveling on the domestic rail leg of a continuous intermodal movement,* such as the ITAs in this case, should be read as § 10502 and not § 10709 contracts." *Som-*

*po,* 540 F.Supp.2d at 498 (emphasis added). This phrasing was intended to emphasize the fact that § 10709 contracts—in this specific context—are still subject to the requirement of offering full Carmack liability. This conclusion is required by the Second Circuit's unqualified holding in *Sompo* that "Carmack applies to the domestic rail portion of an international shipment originating in a foreign country and traveling under a through bill of lading." *See Sompo,* 456 F.3d at 75. Defendants again fail to distinguish this case from *Sompo,* and, in fact, do not even attempt to do so. Second, as previously noted, this conclusion was an independent ground for disposition of the motion. Third, not only did defendants previously argue this same position, but I gave the parties multiple opportunities—including an initial round of briefing, followed by oral argument, followed by a round of letter briefing, followed by an opportunity to submit a final set of briefs—to clarify what constitutes a § 10709 contract as opposed to an arrangement under § 10502. Defendants had ample opportunity to clarify the issues they raise in their reconsideration motion—and, in fact, were specifically asked to do so by the Court in their initial opposition to the motion for partial summary judgement. Motions for reconsideration "should not be granted where the moving party seeks solely to relitigate an issue already decided." *Shrader,* 70 F.3d at 257; *see Perez v. N.Y. Presbyterian Hosp.,* 05 Civ. 5749(LBS), 2006 WL 988371, at *1 (S.D.N.Y. Apr. 14, 2006) (a motion for reconsideration is not "an occasion for repeating old arguments previously rejected nor an opportunity for making new arguments that could have been previously advanced" (quotation omitted)); *Range Road Music v. Music Sales Corp.,* 90 F.Supp.2d 390, 391–92 (S.D.N.Y.2000).

● Defendants argue that the Opinion "is unprecedented and contrary to both feder-

al statutory and decisional law," and contend that "[t]he ruling also renders the railroad's contract with the steamship company, and all similar contracts between railroads and steamship companies, to be null, void, and unenforceable with respect to all claims asserted by unknown third parties professing to have any interest in any freight." (Defs.' Recons. Mem. at 2). Defendants did not, however, make these broad policy arguments before when they opposed plaintiffs' summary judgment motion, and they have not cited any federal statutory or decisional law that dictates a different result. To the contrary, defendants go to great lengths to try to distinguish cases cited in the Opinion that support the result reached by the Court. (Id. at 14–16). Additionally, even if the Opinion "nullifies existing contracts," as defendants contend, this does not change the bottom line: that some entity—defendants or the shipping companies—needed to offer full Carmack liability to the shippers for any limit on liability to be effectual against them.

• Defendants argue that they "had no reason to even know of the subrogors' existence." (Id. at 2). The argument is disingenuous. Defendants, as rail carriers, surely knew that Yang Ming Transport Corporation and NYK Line were not shipping their own goods, but that they were shipping companies acting on behalf of customers. Defendants acknowledge as much by arguing that the Opinion will have a sweeping impact on their existing business arrangements.

• Defendants argue that "the Court failed to consider how a rail carrier could have liability to an entity that was neither shipper nor consignee on the bill of lading." (Id. at 3). This is a mischaracterization. The Opinion addressed only certain contractual provisions purporting to limit

liability. The Court did not consider the threshold issue of whether defendants can be held liable to the shippers' insurance companies at all, for the argument was never made.[2] Rather, in dicta, the Court simply concluded that a § 10709 contract—to which the shippers are not a party and of which they likely did not have notice—cannot *limit* the damages a shipper may seek without some offer of full Carmack liability somewhere along the contractual chain. Furthermore, defendants argue, on one hand, that the limits on liability in their contracts with the shipping companies are binding on plaintiffs' insureds, yet argue, on the other hand, that they have no privity with the shippers and cannot be held fully liable to them. Defendants simply cannot use their position as both a sword and a shield.

• Defendants argue that the Court failed to consider how the rail carriers' liability to the shippers "could be greater than the rail carrier's liability to the actual shipper or consignee." (Id.). First, the Opinion did not directly address whether the ITAs limit liability between the shipping companies and defendants. That matter was not before the Court. Second, if defendants did not know the identity of the shippers, they presumably had the tools—both contractual and legal—to require the shipping companies, who had privity with the shippers, to include an offer and waiver of full Carmack liability.

• On a closely related issue, defendants note that "[c]uriously, the steamship companies are not named as defendants in this action, despite their contractual undertakings." (Id. at 2). They take this argument one step further, by quoting the Supreme Court's decision in Kirby: "It seems logical that [the freight forwarder]—the only party that definitely knew

2. Defendants did not make a motion to dismiss or cross motion for partial summary judgment on the grounds that they are not liable to plaintiffs as a matter of law.

about and was party to both to the bills of lading at issue here—should bear the responsibility for any gap between the liability limitation in the bills." *Norfolk S. Rwy. Co. v. Kirby,* 543 U.S. 14, 35, 125 S.Ct. 385, 160 L.Ed.2d 283 (2004). That may turn out to be the case, and the Opinion does not controvert this proposition. The shipping companies—Yang Ming and NYK Lines—*should* have been parties in this case. Defendants, however, had every opportunity to advise the Court that the shipping companies were necessary parties and move to implead them. No such motion was made. This failure cannot alter the Court's analysis. Additionally, it is not lost on the Court that the defendants in this case and the shipping companies, who are defendants in a related case, are represented by the same counsel. There would appear to be a potential—if not actual—conflict of interest. In any event, the related case is simultaneously proceeding against the shipping companies. Now that these cases are consolidated, the Court will be sensitive to any instance where the plaintiffs take inconsistent positions with respect to the relative liability of the shipping companies and the rail companies.

### *CONCLUSION*

For the reasons set forth above and in the Opinion, defendants' motion for reconsideration is denied.

SO ORDERED.