GRUENDER, Circuit Judge, concurring in part and dissenting in part.
 

 Over the past several decades, deregulation has revolutionized the law governing
 the interstate shipment of goods.
 
 See
 
 22 Richard A. Lord,
 
 Williston on Contracts
 
 § 59:1 (4th ed. 2018). While these changes have given shippers and carriers greater freedom in making contracts, in this case the law mandated the contractual terms at issue. For this reason, I disagree that there is a genuine dispute over the contractual terms governing Whatley's Irving Oil claim, and I respectfully dissent from Part II.B of the court's decision. Because the two-year limitation on Whatley's WFE claim ran from the April 24, 2014 denial letter rather than the November 27, 2013 denial letter, I agree that the WFE claim is timely and concur in that portion of the court's opinion and judgment.
 

 For shipments subject to the Carmack Amendment, rail carriers must use the uniform straight bill of lading prescribed by federal regulations.
 
 [4]
 

 49 C.F.R. § 1035.1
 
 ;
 

 id.
 

 pt. 1035, apps. A, B;
 
 see also
 

 C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.
 
 ,
 
 213 F.3d 474
 
 , 478 (9th Cir. 2000) (explaining that rail and water carriers, but not motor carriers, must use the uniform straight bill of lading). Under § 2(b) of the uniform straight bill of lading, claims involving a failure to make delivery must be filed in writing with the carrier "within nine months after a reasonable time for delivery has elapsed." 49 C.F.R. pt. 1035, app. B. Likewise, § 2(b) permits a lawsuit to be filed "only within two years and one day from the day when notice in writing is given by the carrier to the claimant that the carrier has disallowed the claim or any part or parts thereof specified in the notice."
 
 [5]
 

 Id.
 

 As the court points out, it is not clear from the record whether WFE and Irving Oil expressly agreed to this language.
 
 Ante
 
 , at 619. But because the uniform bill of lading is required by federal law, the time limitation requirements bind the parties regardless.
 
 See
 

 Comsource Indep. Foodservice Cos. v. Union Pac. R.R.
 
 ,
 
 102 F.3d 438
 
 , 443-44 (9th Cir. 1996) ;
 
 Glenn Hunter & Assocs. v. Union Pac. R.R.
 
 , No. 3:01-CV-7602,
 
 2003 WL 403178
 
 , at *1 (N.D. Ohio Jan. 22, 2003) ("The omission of the
 required language does not relieve the Union Pacific of its effect, because the applicable regulation requires the inclusion of that language in the bill of lading."); 2 Sorkin,
 
 supra
 
 n.1, § 10.02 ("If the contractual limitation of action is provided for in the tariff and regulations, no other notice[ ] is required to the shipper."). Consequently, I disagree with the court that "there is a genuine dispute over the very existence of contractual terms in the bill of lading" that precludes dismissal of the untimely Irving Oil claim.
 

 Under the uniform straight bill of lading, Irving Oil had nine months after "a reasonable time for delivery has elapsed" to submit its claim to Canadian Pacific, but it did not submit any claim until April 16, 2015. Given that the accident occurred on July 6, 2013, this was well more than nine months after a reasonable time for delivery had elapsed.
 
 See
 

 Imperial News Co. v. P-I-E Nationwide, Inc.
 
 ,
 
 905 F.2d 641
 
 , 644 (2d Cir. 1990) (finding 124 days "more than a reasonable time" for delivery). Whatley tries to excuse Irving Oil's failure to submit a timely claim by arguing that it waited until it could calculate damages with reasonable precision in light of the ongoing bankruptcy proceedings.
 
 See
 

 Pathway Bellows, Inc. v. Blanchette
 
 ,
 
 630 F.2d 900
 
 , 905 n.10 (2d Cir. 1980). But Whatley did not make this argument below.
 
 Gap, Inc. v. GK Dev., Inc.
 
 ,
 
 843 F.3d 744
 
 , 748 (8th Cir. 2016) ("Ordinarily, this court will not consider an argument raised for the first time on appeal." (internal quotation marks omitted) ). And in any event, a party cannot wait until its total financial burden is clear to bring a claim if it reasonably knows the value of the damaged cargo.
 
 See
 

 5K Logistics, Inc. v. Daily Express, Inc.
 
 ,
 
 659 F.3d 331
 
 , 336 (4th Cir. 2011). Moreover, Irving Oil could at least have filed a partial claim.
 
 See
 

 Am. Rock Salt Co. v. Norfolk S. Corp.
 
 ,
 
 387 F.Supp.2d 197
 
 , 205 (W.D.N.Y. 2005). Indeed, the fact that WFE filed its claim within a year of the accident undermines Whatley's argument that Irving Oil was unable to file a claim until almost two years had lapsed.
 
 [6]
 

 See
 
 id.
 

 I join the court's opinion and judgment on the more difficult question of the timeliness of the WFE claim. And though Canadian Pacific has made several other arguments that might justify dismissal of that claim, I agree that we should allow the district court to consider them in the first instance.
 

 The Carmack Amendment does not necessarily apply to rail shipments. As part of the deregulation of the transportation industry, "shippers and carriers [may] sidestep federal regulation of transportation agreements by entering into private contracts" that are not subject to the Carmack Amendment,
 
 49 U.S.C. § 11706
 
 , but instead are governed by
 
 49 U.S.C. § 10709
 
 .
 
 Babcock & Wilcox Co. v. Kansas City S. Ry.
 
 ,
 
 557 F.3d 134
 
 , 138 (3d Cir. 2009) ;
 
 see also
 
 1 Saul Sorkin,
 
 Goods in Transit
 
 § 5.02 n.167 (2018). But the parties here have made no argument that this contract is governed by § 10709. On the contrary, Whatley states that his claims arise under § 11706.
 

 As Whatley notes,
 
 49 U.S.C. § 11706
 
 (e) requires a minimum of nine months for claims and two years for instituting suits but otherwise allows parties to negotiate limitations periods. Before the ICC Termination Act of 1995, these floors were codified at
 
 49 U.S.C. § 11707
 
 (e) and applied to carriers
 
 generally
 
 . For rail and water carriers, the Interstate Commerce Commission ("ICC") prescribed the uniform straight bill of lading, which mandated the precise time periods described above.
 
 See
 
 Bills of Lading,
 
 58 Fed. Reg. 60797
 
 (Nov. 18, 1993) (to be codified at 49 C.F.R. pt. 1035); Bills of Lading,
 
 9 I.C.C.2d 1137
 
 (1993). Thus, there was no inconsistency between the statute, which generally gave carriers the freedom to impose time limitations by rule or contract subject to the statutory floors, and the regulation, which imposed more stringent standards on rail and water carriers by requiring them to use the uniform straight bill of lading. The ICC Termination Act transformed § 11707 and created separate statutory provisions for different types of carriers.
 
 49 U.S.C. § 11706
 
 (rail carriers), § 14706 (motor carriers and freight forwarders), § 15906 (pipeline carriers). But because the ICC Termination Act contains a savings clause stipulating that previous ICC regulations remain in force, Pub. L. No. 104-88, § 204,
 
 109 Stat. 803
 
 , 941 (1995), there is no reason to read § 11706(e) as casting doubt on the continuing validity of
 
 49 C.F.R. § 1035.1
 
 .
 

 For these reasons, the Irving Oil claim would be untimely even if the limitations periods are tolled pursuant to Whatley's interpretation of the bankruptcy plan. Under that plan, statutes of limitations must be tolled from the Execution Date-here March 2, 2015-to the Plan Implementation Date. By the time the tolling period began, however, Irving Oil's claim was already untimely.