## No. 16,791.

UNION PACIFIC RAILROAD COMPANY *v.*
DENVER-CHICAGO TRUCKING COMPANY, INC.
(252 P. [2d] 437)

Decided August 29, 1952. On rehearing, original opinion adhered to
February 16, 1953.

Messrs. HUGHES & DORSEY, Mr. EDWARD G. KNOWLES,
for plaintiff in error.

Mr. JOHN T. DUGAN, for defendant in error.

*En Banc.*

MR. JUSTICE HOLLAND delivered the opinion of the
court.

THE only question involved on this review is a carrier's liability under the terms and conditions of a bill of lading which contained the following provision: "Sec. 2 (b) As a condition precedent to recovery, claims must be filed in writing with the receiving or delivering carrier or carriers issuing this bill of lading or carrier on whose line the loss, damage, injury or delay occurred, within nine months after delivery of the property. * * * Where claims are not filed or suits are not instituted thereon in accordance with the foregoing provision, no carrier hereunder shall be liable and such claims will not be paid."

We will refer to the parties as they appeared in the trial court, where defendant in error was plaintiff; they will herein be designated as plaintiff or trucking company, and defendant or railroad company.

Plaintiff filed its two causes of action in one complaint against defendant for damage to a shipment of merchandise consisting of motors and motor parts, the shipments originating on or about February 11, 1943 and June 24, 1943 at Chicago, Illinois, to be transported to El Segundo, California. Plaintiff, or trucking company, due to war conditions, did not have sufficient trucks or equipment at the time to transport the property to its destination and delivered same for shipment to the Chicago and Northwestern Railway Company, which, in pursuance of its contract of carriage, in turn delivered the shipments to the Union Pacific Railroad Company, defendant, as a connecting carrier, and the shipments were for delivery to plaintiff. Upon arrival of the car of merchandise at Los Angeles, California, its contents were inspected by defendant and found in a damaged condition and the inspector's reports were delivered to plaintiff. Damages were claimed in the first cause of action on the first shipment in the sum of $238.06, and in the second cause of action for the second shipment in the sum of $613.10. The defenses to both causes of action are in substance that plaintiff did not comply with the condition precedent in the bill

of lading as to filing its written claim for damage within nine months after the delivery. A pre-trial conference was had and an order entered thereon in which it is shown that defendant admitted the damage, but denied liability, and the order discloses a stipulation as to the correctness of certain exhibits and their admissibility, subject to objections as to relevancy and materiality as may be made at the time of the trial. Among these exhibits are four letters. One from plaintiff to defendant dated January 25, 1945, relating to the first cause of action and the answer thereto, dated May 29, 1945, rejecting the claim; another letter dated December 16, 1944, from plaintiff to defendant, claiming damage according to the second cause of action or second shipment, and the answer thereto, dated June 18, 1945, which claim also was denied. The order also shows an admission by defendant that it took possession of the damaged files about July 15, 1943 and disposed of same for salvage, receiving therefor the sum of $351.59, which it is holding for plaintiff and agrees to pay at any time; and defendant offered to allow judgment to be taken against it in that sum, plus interest from the date of the demand, amounting to the total sum of $476.40.

Trial was had to the court and judgment entered for plaintiff based upon the admission of the amount of damage, and generally on the ground "that while plaintiff did not literally comply with the condition precedent in the bill of lading by filing a claim in writing as provided for, but excused itself on the ground that the company was notified, acknowledged that the goods were damaged, and made certain inspections, and that it has had at all times full knowledge, and has not in any respect been hindered in its investigation of damage in any way by the plaintiff company failing to file a claim in writing." The court further determined that the ruling in *Georgia, Florida & Alabama Railway Co. v. Blish Milling Co.*, 241 U. S. 190, was controlling in the case at bar.

Defendant incorporated a motion to dismiss in its answer and urged the same at the outset of the trial, at the conclusion of plaintiff's case, and again at the conclusion of the trial, on the general ground that the complaint did not contain an allegation of the condition precedent, which was a requirement that claim in writing be filed with defendant within nine months after the delivery upon which the claim is predicated; and finally, that the evidence did not show compliance with the requirement. The denial of these motions is the principal specification of point relied upon by defendant for reversal.

Our discussion will be confined to the question of compliance by plaintiff with the condition precedent contained in the bill of lading, and the ruling of the trial court on defendant's motions to dismiss. Other points specified are worthy of discussion; however, our disposition of the pivotal question renders such discussion unnecessary.

There is no denial that the first letter or communication from plaintiff to defendant concerning a claim was twenty-two months after the first shipment; and the first communication or letter in which claim was made for damage to the second shipment, was December 16, 1944, which was approximately seventeen months after delivery. It is the contention of plaintiff trucking company that there was a substantial compliance with the provision of the bill of lading for the reason that the inspection reports were called for by plaintiff, they were made by defendant in the presence of plaintiff, and reduced to writing, and that writing is sufficient under the cases, to comply with the bill of lading. The court in its findings stated that the evidence introduced convinced it that defendant company had knowledge that a loss would be claimed. We are unable to so interpret the evidence. It must be borne in mind that there is a marked distinction and difference between inspection for damage and an investigation to determine liability. It

further will be observed that defendant railroad company admitted or conceded damages only, but never conceded liability, and no negligence was in any way admitted. It may seem unnecessary to say that it cannot be assumed that because there was damage to the shipment, that the carrier was liable therefor. Defendant does not deny that it had notice of damage; however, that is not a notice of a claim therefor. The claim may never materialize for several reasons. Plainly spoken, a notice is not a claim. It is one thing for plaintiff to say it was damaged, and quite another to make claim for the damage or expect a response to the claim of liability, if any.

This was a shipment in interstate commerce; the liability of carriers is fixed by congressional act; and the decisions of the Supreme Court of the United States and other federal decisions in harmony therewith are to be considered as controlling in these cases. "According to the great weight of authority a carrier, in the absence of statutory restriction, may make a valid contract stipulating that notice of any claim for the loss of, or damage to, goods in transit shall be given within a specified time, and making the giving of the notice a condition precedent to the right to enforce the carrier's liability; * *. * Its general purpose, of course, is protection to the carrier, by affording it an opportunity to make an investigation of a claim, while the matter is fresh and easily investigated, and so to safeguard itself from false and fraudulent claims. * * *" 9 American Jurisprudence, page 914, section 796.

It is not denied that when the merchandise to be shipped was delivered, the customary bills of lading were delivered to plaintiff, the shipper, and the record discloses no objections on its part to the terms of the bill of lading. In this instance, it properly may be assumed that plaintiff, being in the business of interstate transportation by truck, was, and is, as familiar with the terms and conditions of the interestate bills of lading as

would be defendant railroad company; therefore, plaintiff, not being the ordinary or casual shipper, is presumed in law to know the conditions imposed upon it by a bill of lading before recovery could be had. It was obligated as a condition precedent to make its claim for damage within nine months from the date of delivery. It is definitely disclosed by the record that such requirement was not met until twenty-two months after delivery in one instance, and seventeen months in the other. The shipper concededly relied upon the fact that upon delivery the goods were inspected by it on behalf of defendant for damage, and therefore further claim was unnecessary in order to comply with or meet the conditions of the bill of lading. "The general rule is that a substantial compliance with stipulations with respect to notice of loss or claim for damage is all that is required, having in view the object and purpose of the provision, which is to afford the carrier a reasonable opportunity to determine the merits and validity of the claim and protect itself against imposition. Such substantial compliance is, however, unless waived or excused, a condition precedent to the right of recovery; at least, where it is expressly so provided. And where the stipulation provides for an initial notice of loss and a subsequent notice of claim for damages, compliance with the requirement as to the first notice does not obviate the necessity for giving the second." 9 American Jurisprudence, page 919, section 801.

It will be noted that the general rule provides that initial notice of loss and a subsequent notice of claim for damages are separate and distinct, and it reasonably may be said that knowledge of damage on the part of defendant does not obviate the necessity for the shipper to give notice of its claim for damage within the prescribed time.

It is interesting to further note that in the letter from plaintiff to defendant of January 25, 1945—twenty-two months after the delivery—in which the claim for dam-

age is made, plaintiff states, "Due to the fact that we are at this *late* date actually making payment to the railroad company for the freight charges due them on this shipment, we believe *the railroad company in view of the foregoing circumstances, should waive the time limit for filing this claim for damage in this car,* * * *"; thereby fully recognizing noncompliance on its part with the condition precedent with an apparent realization that unless defendant company waived the time limit for filing the claim, it, plaintiff, could not recover.

The case of *Georgia, Florida & Alabama Railway Co. v. Blish Milling Co., supra,* is, in our opinion, authority for reversal of this judgment instead of being authority for the judgment entered as the court so considered, because in that case a telegram within five days after the arrival of the goods was sent to the carrier in the following words, "We will make claim against railroad for entire contents of car at invoice price. We must refuse shipment as we cannot handle." In that case, in connection with the court's finding that substantial compliance had been made, is the fact that a telegram had been sent, and the court makes it clear that in the absence of such, or a similar, claim, then the strict provision of the condition precedent must prevail as is shown by the following quotation from that case: "But, while this is so, we think that the plaintiff in error is not entitled to succeed in its ultimate contention under the stipulation for the reason that it appears that notice of the claim was in fact given. It is true that in the statement made by the Court of Appeals it is said that so far as appears from the record 'no claim was filed by the shipper.' We must assume, however, that this was in effect a construction of the provision as requiring a more formal notice than that which was actually sent. For the court had already set forth the uncontroverted facts in detail showing that the shipper (having made an investigation in response to the communication of the traffic manager of the Railway Company) had telegraphed to the latter,

on June 7, 1910, only five days after the arrival of the goods at destination, as follows: 'We will make claim against railroad for entire contents of car at invoice price. Must refuse shipment as we can not handle.' In the preceding telegrams, which passed between the parties and are detailed by the state court in stating the facts, the shipment had been adequately identified, so that this final telegram taken with the others established beyond question the particular shipment to which the claim referred and was in substance the making of a claim within the meaning of the stipulation,—the object of which was to secure reasonable notice. We think that it sufficiently appraised the carrier of the character of the claim, for while it stated that the claim was for the entire contents of the car 'at invoice price' this did not constitute such a variance from the claim for the value of the flour as to be misleading; and it is plain that no prejudice resulted. Granting that the stipulation is applicable and valid, it does not require documents in a particular form. It is addressed to a practical exigency and it is to be construed in a practical way. The stipulation required that the claim should be made in writing, but a telegram which in itself or taken with other telegrams contained an adequate statement must be deemed to satisfy this requirement."

In accordance with the views herein expressed, the judgment is reversed and the cause remanded with directions to enter judgment in plaintiff's favor against defendant in the sum of $476.40, in compliance with defendant's offer.