**ATLANTIC COAST LINE RAILROAD COMPANY, Appellant,**

v.

**PIONEER PRODUCTS, Inc., Appellee.**

**No. 16987.**

United States Court of Appeals
Fifth Circuit.

June 5, 1958.

Leonard G. Anderson, Wilmington, N. C., Larry E. Pedrick, Waycross, Ga., James E. Williams, Wilmington, N. C., for appellant.

Anthony A. Alaimo, E. Way Highsmith, Brunswick, Ga., for appellee.

Before HUTCHESON, Chief Judge, and TUTTLE and BROWN, Circuit Judges.

HUTCHESON, Chief Judge.

Appellant, plaintiff below, instituted this suit to recover freight charges in the amounts of $662.76 and $615.80, respectively, on two shipments of lumber from Canada to Doctortown, Georgia.

Defendant counterclaimed and sought recovery for damages to three shipments of lumber, two from Canada and one from Charleston, South Carolina, in the total amount of $10,000. The shipment covered by paragraph 3 of the counterclaim is the same on which plaintiff sought recovery of its freight charges under paragraph 4 of the complaint. It is alleged in the counterclaim that the lumber was damaged due to the negligence of the plaintiff.

The issues were joined upon the filing of an amended complaint and answer by plaintiff denying negligence and setting up as a further defense the failure of defendant to give written notice of damage or make written claim therefor within the times prescribed by the bill of lading contracts.

The case was heard without a jury and the parties agreed that two of the shipments involved in the counterclaim were transported on Canadian bills of lading and that the remaining shipment

moved on a domestic bill of lading. It was also agreed that the Canadian bills of lading contained a provision that the carrier must be notified in writing within four months after delivery of any damage to said shipments in order to hold the delivering carrier liable therefor, and that the domestic bill of lading contained a provision that a claim for damage must be filed in writing with the carrier within nine months after delivery as a prerequisite for recovery.

The only witness to testify was called by the defendant. His testimony was undisputed that the two shipments of lumber from Canada were damaged in the amounts of $3,411.11 and $4,544.25 respectively, and that the domestic shipment from Charleston, South Carolina was damaged in the amount of $1,057.47.

The evidence further disclosed: that no written notice of or claim for damages was filed by defendant within either four or nine months from date of delivery with respect to the three damaged shipments; that the plaintiff's freight agent was only verbally notified of dam-

age in each instance; and that plaintiff's inspector made a written report to his superiors of the damage in each instance.

Final judgment, based on findings of fact,[1] in favor of plaintiff for its freight charges in the total amount of $1,278.56 and in favor of defendant on the counterclaim in the amount of $10,000 was entered on Sept. 16, 1957, and plaintiff gave notice of appeal from said final judgment on Oct. 11, 1957, plaintiff is appealing from so much of the final judgment as allows defendant to recover $10,000 on its counterclaim.

Here the appellant does not claim prejudice or other actual harm from the failure of counter-claimant to comply literally with the provisions of the bills of lading by sending specific notices and making specific claims in writing. Instead, citing many cases,[2] appellant insists that such literal compliance is a prerequisite to recovery and that appellee is in effect asking this court as to all the shipments to rewrite the contracts between the parties and in addition as to the South Carolina shipment to nullify

1. "Findings of Fact.

"1. The Defendant admitted owing plaintiff and the other railroads involved freight charges in the total amount of $1,278.50, and that plaintiff was entitled to an offset in this amount against defendant's counterclaim against plaintiff.

"2. As to defendant's counterclaim against plaintiff, the undisputed testimony was that the three carload shipments involved were damaged upon arrival; that defendant immediately notified plaintiff of the damage, before accepting and unloading the material, one car having been shipped 'Order Notify' that plaintiff sent its inspector from Jacksonville, Florida, to inspect the shipments; that the inspector admitted the damage and tacitly, if not actually, admitted plaintiff's liability therefor; that the inspector requested the defendant to accept the material, unload it and salvage what he could from it, sending plaintiff a bill for the difference between the cost and the salvage value; that defendant did this and has not been paid by plaintiff; that defendant would have refused to accept and pay for this badly damaged material if he had not been led to believe that the railroad would assume responsibility that written reports

of the damage were immediately filed with the railroad by its own local agent on defendant's behalf. These written reports were furnished upon the trial by plaintiff Railroad Company and were introduced in evidence. The plaintiff railroad company did not deny the damage and the amount thereof. It did not deny that defendant would not accept the shipments until the matter of the damage had been settled and until it had been authorized and directed to dispose of the material and submit its claim for the difference between the cost and the salvage value. It did not deny that its inspector thus, in effect, assumed responsibility for the damage. It did not deny that it promptly received written notice in detail of the nature and extent of the damage to this high class specialty lumber from its own agent.

2. Texas & N. O. R. Co. v. McNatt, Tex. Civ.App., 223 S.W.2d 651; Union Pac. R. Co. v. Denver-Chicago Trucking Co., 126 Colo. 581, 253 P.2d 437; East Texas Motor Freight Lines v. United States, 5 Cir., 239 F.2d 417; Northern Pac. Ry. Co. v. Mackie, 9 Cir., 195 F.2d 641; and Insurance Co. of North America v. Newtowne, 1 Cir., 187 F.2d 675.

the provisions of the Interstate Commerce Act, 49 U.S.C.A. § 1 et seq., and the decisions in the cases construing it.

As to the bulk of the recovery, the Canadian shipments, while agreeing with appellee that the Interstate Commerce Act is admittedly not applicable to them and compliance with the provisions of the bills of lading may be waived, appellant insists that there is no proof in the record that there has been a waiver by the railroad of a written notice as required by the bill of lading contracts.

On its part, urging upon us that under the undisputed facts of this case, as found by the district judge, there has been substantial, indeed all but literal compliance and it would be a sticking in the bark to agree with and give effect to appellant's contention, appellee cites and relies on Georgia, Florida & Alabama Ry. Co. v. Blish Milling Co., 241 U.S. 190, 36 S.Ct. 541, 60 L.Ed. 948; Thompson v. James G. McCarrick Co., 5 Cir., 205 F.2d 897; Hopper Paper Co. v. Baltimore & O. R. Co., 7 Cir., 178 F.2d 179; and Loveless v. Universal, 10 Cir., 225 F.2d 637.

While in the present state of the authorities viewed generally, the answers to the questions presented are not wholly free from doubt, especially as to the domestic shipment, which is governed by the act, we are of the opinion that under the district judge's findings of fact which the record sustains, the judgment must be affirmed as to the Canadian shipments and reversed as to that from South Carolina.

█ █ This is so because as to the Canadian shipments the evidence in this case is so overwhelming, that the carriers knew all about the occurrence through the detailed written report of its agent of the condition of the goods and the complaint made of that condition by the consignee, as to compel the conclusion that, if this notice was not itself a substantial compliance with the contract, the giving of a further written notice was waived.[3]

█ As to the South Carolina shipment, however, while the evidence in this case takes us to the verge of approving the repudiation of a clear, indeed recognized, liability, the thoroughly considered decision of this court in East Texas Motor Freight Lines v. United States, supra, compels the conclusion that the making of a written claim was an essential to and the failure to make it prevented, recovery.

*Affirmed in part and reversed in part.*

---

3. Each Canadian bill of lading merely required:

"Notice of loss, damage or delay must be made in writing to the Carrier at the point of delivery, or to the Carrier at the point of origin, within four months after delivery of the goods * * *. Unless notice is so given, the Carrier shall not be liable."

No particular source of such notice or formality other than a writing was required. The record reflects without dispute, and the Court expressly found, that a detailed written report describing the nature and probable extent of the damage was prepared, verified and signed by plaintiff's own inspector.

Unlike the American bill of lading, no *claim* in writing was called for. As our opinions in East Texas Motor Freight Lines v. United States and Thompson v. James G. McCarrick Co., supra, as well as others reflect, the usual question is whether the writing sufficiently makes a *claim* in the sense of asserting that, because of the physical damages otherwise reported or known, the shipper intends to hold the carrier liable for, and thereby seeks recovery of, the money value of the loss. That element was not required in the Canadian notice. The carrier knew of the loss and damage. It had this knowledge in writing, written contemporaneously with delivery of the goods. The writing contained all that a written notice of loss or damage prepared and filed by the shipper or consignee would have to contain. There was thus either actual compliance or if it is assumed that the notice was to be initially prepared by the shipper-consignee, the difference was here so trivial that it was within the power of the plaintiff to, and it did waive literal compliance.