CONAGRA, INC., Plaintiff,

v.

BURLINGTON NORTHERN,
INC., Defendant.

Civ. No. 76–0–387.

United States District Court,
D. Nebraska.

Oct. 28, 1977.

James P. Fitzgerald, Omaha, Neb., for plaintiff.

Harry B. Otis, Omaha, Neb., for defendant.

## MEMORANDUM

DENNEY, District Judge.

On August 2, 1973, Conagra shipped several hopper cars full of wheat from Omaha, Nebraska to Tampa, Florida. The carrier of the wheat was the defendant, Burlington Northern, Inc. Four days later, the railroad cars derailed in Illinois. Several of the cars were damaged, and approximately 390,360 pounds of the grain were lost.

According to the uncontroverted affidavit of the supervisor of freight claims for Conagra, a Burlington Northern employee telephoned the plaintiff and informed it of the derailment a day or so after the loss took place. The transloaded weight of the wheat was also communicated to Conagra at this time. Burlington Northern orally promised to send Conagra the official certificates of the wheat weight as measured in Tampa as verification of the amount of the loss. Conagra never received any written verification of the spillage, in the form of official weight certificates or otherwise.

During the period immediately following the derailment, Conagra and Burlington employees were in frequent telephone contact. The parties have stipulated that employees of Burlington were verbally advised of Conagra's intention to hold the railroad liable for all damages arising out of the derailment.

No formal written claim for the loss of the wheat was submitted to Burlington until August 23, 1974. On October 18, 1974, Burlington refused to reimburse Conagra on the ground that the claim was not timely under the terms of the contract of carriage. Conagra filed the present suit to recover damages associated with the wheat spill. The case is currently before this Court upon motions for summary judgment filed by both parties.

Paragraph 2(b) of the bill of lading issued by Burlington Northern to Conagra contains the following language:

As a condition precedent to recovery, claims must be filed in writing with the . . . carrier on whose line the loss, damage, injury or delay occurred, within nine months after delivery of the property; . . . and suits shall be instituted against any carrier only within two years and one day from the day when notice in writing is given by the carrier to the claimant that the carrier has disallowed the claim . . .. Where claims are not filed or suits are not instituted thereon in accordance with the foregoing provisions, no carrier hereunder shall be liable, and such claims will not be paid.

Conagra, despite its lack of observation of the "nine month" clause, has urged this Court to enter judgment against the railroad due to its actual knowledge of the accident and the damages. Burlington defends on the ground that the terms of the contract are binding and should not be judicially disregarded.

Bills of lading with similar time limitations are commonly used in the interstate shipment of goods. The existence of statutory requirements that encourage uniformity is the main reason for the standardized language. See 49 U.S.C.A. § 20(11) (1951). As a result, considerable case law exists interpreting bills of lading containing time limitation provisions.

*Oral Notification Impermissible*

■ Precedents that have been drawn to the attention of this Court are unanimous in requiring more than oral notification to satisfy time limitation covenants within standardized bills of lading. *St. Louis, I. M. & S. Ry. v. Starbird,* 243 U.S. 592, 606, 37 S.Ct. 462, 61 L.Ed. 917 (1917); *American Synthetic Rubber Corp. v. Louisville & N. R. R.,* 422 F.2d 462, 468 (6th Cir. 1970). As a general proposition, such time limitations are enforceable and cannot be waived by the parties. *Loveless v. Universal Carloading & Distributing,* 225 F.2d 637, 639 (10th Cir. 1955).

*Waiver and Estoppel*

■ Conagra urges that the facts in this case warrant a departure from the general rule. More specifically, Conagra maintains that claims submitted to Burlington Northern were consistently rejected in the past when official weight certificates did not accompany the written notice. Assuming that this practice currently exists, delay pending verification is not a legal ground for ignoring the terms of the contract. It is not disputed that Conagra had actual knowledge of the unofficial weights of the transloaded cars soon after the derailment. Some courts have held that the time limitation on written notice is binding even if the amount of damage to the goods is indefinite. *Burns v. Chicago, M., St. P. & Pac. R. R.,* 192 F.2d 472, 476–77 (8th Cir. 1951); *Manby v. Union Pac. R. R.,* 10 F.2d 327, 328 (8th Cir. 1926). Conagra is certainly in a better position to file a reasonably specific claim than the plaintiffs in these cases. No undue burden is imposed upon Conagra when the sole requirement is the submission of a written demand to satisfy the bill of lading. Verification documents could supplement the carrier's records once they became available. Investigation initiated in response to a formal claim would often speed up the process of quantifying or verifying a loss.

■ Even if the previous pattern of claim rejection without verification by Burlington is tantamount to a commercial "course of dealing", it seems apparent that the written terms of the contract could not be varied by any pre-existing common basis of understanding. L. Simpson, Handbook of the Law of Contracts § 101, at 208 (2d ed. 1965); Neb.Rev.Stat. (U.C.C.) § 1–205 (Reissue 1971).

■ No allegation has been made that Burlington Northern expressly assured Conagra that it did not have to file the notice of claim within nine months. No evidence suggests that a consistent pattern of waiver of the time limitation induced Conagra to act as it did. An estoppel argument based upon a theory of inducement is therefore of no force. *Penn State Laundry v. Penn. R. R.,* 134 F.Supp. 955, 956 (W.D. Pa.1955).

*Written Notice*

■ Written notice under time limitation clauses must inform the carrier of the shipper's claim for damages. Notice of the existence of the loss is not sufficient. The aggrieved party must manifest his intent to hold the carrier accountable. *Anchor Line v. Jackson,* 9 F.2d 543, 545 (2nd Cir. 1925); *Union Pac. R. R. v. Denver-Chicago Trucking Co.,* 126 Colo. 581, 253 P.2d 437 (1953).

■ The bill of lading involved here anticipates the filing of a formal claim by the injured consignor. This requirement of a written notice under the contract of carriage does not offend public policy. *Georgia, Fla. & Ala. Ry. v. Blish Milling Co.,* 241 U.S. 190, 196, 36 S.Ct. 541, 60 L.Ed. 948 (1916). However, in an attempt to mitigate the potential harshness of the rule and to serve the policies behind the notice covenant, most courts have recognized the sufficiency of an informal writing. Detailed documentation of the claim is not required. *Minot Beverage Co. v. Minneapolis & St. L. Ry.,* 65 F.Supp. 293, 296 (D.Minn.1946). Any written document which identifies the damaged shipment and indicates an intention to hold the carrier responsible is sufficient. *Insurance Co. of North America v. Newtowne Mfg. Co.,* 187 F.2d 675, 681 (1st Cir. 1951).

The Supreme Court has held that an exchange of telegrams between the shipper and the carrier is sufficiently formal to satisfy the bill of lading requirement. *Blish Milling, supra,* 241 U.S. at 197–98, 36 S.Ct. 541. An acknowledgment by the carrier that damages were sustained in transit due to negligent handling has been held to be enough, even though the "writing" was authored by the carrier rather than the claimant. *Loveless, supra* at 641.

Although the tendency has not been widely noted by the judiciary, it seems that a more formalized notice is required when facts involving a claim are not within the exclusive knowledge of the common carrier. Compliance with the written notice requirement seems to be more important when the loss is discovered by the consignee or more than one carrier is involved. In the analysis of the evidence in the present litigation, it may be significant that all of the information relating to the claim was in the possession of Burlington.

A number of exhibits concerning the train derailment have been submitted to this Court. To facilitate the weighing of the significance of these documents, it is best to divide the materials into two groups. The first category contains all exhibits that came into existence prior to the expiration of the nine month period within the bill of lading. All documents prepared after the contractual time period had run are within the second group.

Exhibits that fall within the first category do not refer to the loss of wheat, but emphasize the need for undamaged hopper cars to transport the remaining grain to Florida. Nothing in this grouping could conceivably constitute written notice of loss.

The second series of exhibits is headed by Conagra's untimely notice of claim and a rather detailed computation of the claimed amount. A written memorandum prepared by a Burlington claims agent in response to Conagra's written notice is also in evidence. This memorandum recognizes that the Conagra claim was not received within nine months of the derailment, but suggests that Burlington Northern was "in possession of all pertinent facts relating to [the] shortage of wheat" as of late August of 1973.

■ This Court believes that this admission is insufficient to satisfy the written notice requirement of the bill of lading. While a different result might be mandated under *Loveless* if records prepared by Burlington prior to the expiration of the written notice deadline were before the Court, the memorandum cannot serve this purpose. Some of the policies that have prompted judicial approval of time limitations on written notice are served by this holding.

One policy that is promoted by observation of the written notice requirement involves the desirability of establishing a record of a claim. A written claim allows the carrier to have permanent evidence of an intention to claim damages within its files. *Starbird, supra,* 243 U.S. at 605, 37 S.Ct. 462. This sort of evidence would normally compel a railroad to initiate a comprehensive review of all of the facts pertinent to the loss. A centralized file would probably be set up. An oral notice of claim would not necessarily motivate a carrier to carry out this sort of review, especially if the railroad delays the process in anticipation of the formal claim.

The need for some sort of a permanent record of the claim is even more important in the modern business community. Faced with an argument that formal written notice is not required where a railroad has certain facts within its exclusive knowledge, the Supreme Court has observed that "the transactions of a railroad company are multitudinous, and are carried on through numerous employees of various grades. Ordinarily, the managing officers, and those responsible for the settlement and contest of claims, would be without actual knowledge of the facts of a particular transaction." *Blish Milling, supra,* 241 U.S. at 195–96, 36 S.Ct. at 544. *Accord, Northern Pac. Ry. v. Mackie,* 195 F.2d 641, 642–43 (9th Cir. 1952).

In the present litigation, documents relating to the damaged hopper cars reflect the

interstate character of claims investigations. Different corporate departments in different cities are often involved in the processing of claims of this sort. Without the stimulus provided by the filing of a proper written claim, diverse facts might not be drawn together by a carrier until the claim is stale.

██ The avoidance of stale claims is another purpose of the limitations within the bill of lading. The Supreme Court has recognized that the nine month limitation upon the filing of claims is "not to escape liability but to facilitate prompt investigation." *Blish Milling, supra,* 241 U.S. at 196, 36 S.Ct. at 544. While the Burlington Northern memorandum in evidence before this Court suggests that an investigation would reveal no further facts relating to the amount of the grain loss, it does not state that any investigation had taken place on the liability issue. It is true that a train derailment is strongly indicative of negligence on the part of the carrier. However, Burlington has never conceded its carelessness. In the case of *Hopper Paper Co. v. Baltimore & O. R. R.,* 178 F.2d 179, 182 (7th Cir. 1949), *cert. denied* 339 U.S. 943, 70 S.Ct. 797, 94 L.Ed. 1359 (1950), a three-judge panel refused to enforce a nine month limitation upon a claim where "a carrier has full knowledge of a loss caused by its admitted negligence and a written record thereof in its files . . ." The *Hopper* case has been widely criticized for its liberality in interpreting the written notice requirement of the bill of lading. *See, e. g., East Texas Motor Freight Lines v. United States,* 239 F.2d 417, 420 n. 10 (5th Cir. 1956). Yet in the present litigation, there has been no concession of negligence and no showing of a written record of any kind in the possession of Burlington prior to Conagra's untimely formal claim. While the equities may lie with Conagra because of the defendant's actual notice, an extension of *Hopper* would result in a dubious precedent. This Court declines to permit the erosion of the written notice requirement to the point of non-recognition.

An order is filed contemporaneously herewith in accordance with this memorandum.