# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 04-3980

_____

| | | |
|---|---|---|
| Abdel Elnashar, | * | |
| | * | |
| Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Minnesota. |
| United States Department of Justice; | * | |
| Federal Bureau of Investigation, | * | |
| Minneapolis Office; Myron Umbel, | * | |
| and Other Unknown FBI Agents, | * | |
| | * | |
| Appellees. | * | |

_____

Submitted: October 12, 2005
Filed: May 3, 2006

_____

Before BYE, BEAM, and SMITH, Circuit Judges.

_____

BEAM, Circuit Judge.

Abdel Elnashar filed suit against the Department of Justice (DOJ) and the Federal Bureau of Investigation (FBI), seeking expungement of his record, access to his record, and damages relating to the release of his record. He advanced claims under the Privacy Act, 5 U.S.C. § 552a, the Freedom of Information Act, 5 U.S.C. § 552, and Amendments I, IV, and V of the United States Constitution. The district

court[1] granted judgment on the pleadings in favor of the DOJ and FBI. Elnashar appeals. Finding no error, we affirm.

## I. BACKGROUND

The district court granted judgment on the pleadings in favor of the FBI and DOJ; therefore we accept all facts pled by Elnashar as true and draw all reasonable inferences from the facts in his favor. Waldron v. Boeing Co., 388 F.3d 591, 593 (8th Cir. 2004). On September 14, 2001, the FBI and DOJ announced an investigation into the September 11, 2001, terrorist highjackings, which was named PENTBOMB. In November 2001, an unnamed individual contacted the Minneapolis Office of the FBI regarding Elnashar. In April 2002, two FBI agents interviewed Elnashar at his home.

Shortly thereafter, Elnashar filed an employment discrimination complaint with the Saint Paul Human Rights Department (HR Department), against his former employer. As part of the investigation, the HR Department sought the identity of the unnamed individual who had contacted the FBI. Elnashar believed that a former coworker or supervisor had made the contact. Elnashar signed a release, authorizing the HR Department to obtain and examine copies of all documents and records contained by the FBI pertaining to Elnashar. The HR Department requested those documents from the FBI. The FBI responded with a letter stating that there were records that were responsive to the request, but that the records were part of the ongoing PENTBOMB investigation and could not be released. The HR Department subsequently dismissed Elnashar's employment discrimination claim. Elnashar requested the name of the reporting individual from the FBI on February 26, 2003, and his request was denied.

---

[1]The Honorable Joan N. Ericksen, United States District Judge for the District of Minnesota.

After the denial, Elnashar brought this action. The FBI provided records to Elnashar, with the name of the individual who contacted the FBI, and any identifying information, redacted. The records include the dates on which the individual contacted the FBI, as well as information from Elnashar's interview with the two FBI agents, describing his immigration to the United States, his foreign travel, and his work history.

## II. DISCUSSION

### A. Standard of Review

We review de novo the district court's entry of judgment on the pleadings, which should only be granted if the moving party has clearly established that no material issue of fact remains and the moving party is entitled to judgment as a matter of law. Waldron, 388 F.3d at 593.

### B. The Privacy Act Claim

The Privacy Act prevents federal agencies from releasing records "except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains" or unless other specified conditions are met. 5 U.S.C. § 552a(b). It also requires that agencies ensure that records "are accurate, complete, timely, and relevant for agency purposes" prior to dissemination. Id. § 552a(e)(6). The Privacy Act further provides that governmental agencies shall "maintain no record describing how any individual exercises rights guaranteed by the First Amendment unless expressly authorized by statute or by the individual about whom the record is maintained or unless pertinent to and within the scope of an authorized law enforcement activity." Id. § 552a(e)(7).

Elnashar argues that the district court made three errors with respect to his Privacy Act claims concerning the maintenance of records and the release of information about these records to the HR Department. First, he claims that the FBI maintained records outside the scope of any law enforcement prosecution or investigation, about how he exercised his First Amendment rights. To claim a violation of section 552a(e)(7) of the Privacy Act, Elnashar must allege that the FBI maintained records of how he exercised his First Amendment rights and that these records were not within the scope of a law enforcement activity. As the district court correctly noted, the FBI contacted Elnashar to determine whether he had expertise with chemical weapons. Elnashar has failed to identify how his First Amendment rights were implicated.

Second, Elnashar argues that the district court erroneously read an intent standard into the Privacy Act and thus erred by evaluating whether the FBI's response to the HR Department portrayed him as a suspected terrorist, since this is the province of the jury. Third, he argues that the district court wrongly held that his release, authorizing the HR Department to obtain and examine copies of all FBI documents and records pertaining to Elnashar, barred his claim because he had consented to disclosure. Because we agree that the release bars Elnashar's claim, we need not reach his intent argument.

Specifically, Elnashar claims the FBI violated the Privacy Act by unreasonably and unnecessarily informing the HR Department that the records were part of the PENTBOMB investigation. We disagree. Elnashar signed a release "authoriz[ing] representatives of the SAINT PAUL HUMAN RIGHTS DEPARTMENT to obtain and examine copies of all documents and records contained by the Federal Bureau of Investigation (FBI) pertaining to Abdel Elnashar." In the FBI's response to the HR Department, the FBI disclosed that it had records which were responsive to the request for records and that the records were contained in the "PENTBOMB" investigation, "relating to the terrorist attacks on September 11, 2001, which is considered a pending

investigation and which involves an ongoing prosecution." This disclosure was made in accordance with Elnashar's release. The FBI did not disclose whether Elnashar was an informant, victim, witness, or suspect. It simply stated the location of the documents that contained mention of Elnashar, revealed by an automated search, and why the records could not be released. In a response to a request accompanied by written consent, the FBI complied with its duties under the Privacy Act. 5 U.S.C. §§ 552a(b) and (e)(6).

### C.    The Request for Judicial Expungement

Elnashar has also asked that the district court order expungement of any FBI records about him. He argues that the district court erred in determining that Elnashar must exhaust his administrative remedies before seeking judicial amendment of those records. Elnashar has not requested that the FBI amend his records; therefore the district court correctly determined that it did not have jurisdiction under 5 U.S.C. § 552a(g)(1)(A). Whittle v. Moschella, 756 F. Supp. 589, 596 (D.D.C.1991) (holding that administrative request for amendment and subsequent denial "is a necessary prerequisite to the Court's jurisdiction [which] is explicit in the Privacy Act"). Elnashar, however, asserts that since expungement is not a specific remedy available under the Privacy Act, the exhaustion requirement should be waived because exhaustion of administrative remedies would be futile in this instance. This argument has no merit, because Elnashar can still *request* amendment, including expungement, under the Privacy Act.  5 U.S.C. § 552a(d)(2). If his request is denied, then he can pursue his claim in the district court.

### D.    Review of the Unredacted Record

Finally, Elnashar sought access to a full, unredacted record, based on the Freedom of Information Act, 5 U.S.C. § 552(a)(4)(B), and the Privacy Act, 5 U.S.C.

§§ 552a(d)(1) and (g)(1)(B). Elnashar requested the name of the reporting individual from the FBI, and his request was denied. This denial was not appealed.

Elnashar argues that the district court erred by failing to make a de novo review of an agency decision. The district court granted judgment on the pleadings in favor of the FBI and DOJ for the access claim, because Elnashar had failed to exhaust his administrative remedies.[2] Elnashar argues that since he was entitled to a judicial review of the unredacted FBI record, the district court necessarily could not grant judgment on the pleadings, because the unredacted records were not part of the pleadings. The district court relied on a magistrate judge's order to determine that Elnashar did not exhaust his administrative remedies because he did not administratively appeal his request for records. Because the district court may look to public records not contradictory to the complaint, in a motion for judgment on the pleadings, Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir. 1999), the district court used a correct methodology to determine that Elnashar did not exhaust his administrative remedies in seeking access to his records, which is a prerequisite to bringing suit. 5 U.S.C. § 552(a)(6)(A); 5 U.S.C. § 552a(f)(4); Brumley v. United States Dep't of Labor, 767 F.2d 444, 445 (8th Cir. 1985) (per curiam); 28 C.F.R. § 16.45(c).

## III.  CONCLUSION

We have carefully reviewed all of Elnashar's allegations of error, and find they are without merit. Accordingly, we affirm.

---

[2]Because the issue was not squarely presented or briefed, we do not decide whether Elnashar actually failed to exhaust his administrative remedies, nor whether exhaustion would have been futile for his access claim.