# United States Court of Appeals
## For the Eighth Circuit

_____

No. 17-1677

_____

Joe R. Whatley, Jr., solely in his capacity as the WD Trustee of the WD Trust

*Plaintiff - Appellant*

v.

Canadian Pacific Railway Limited; Canadian Pacific Railway Company; Soo Line Corporation; Soo Line Railroad Company

*Defendants - Appellees*

_____

Appeal from United States District Court
for the District of North Dakota - Bismarck

_____

Submitted: March 13, 2018
Filed: September 14, 2018

_____

Before GRUENDER, BEAM, and KELLY, Circuit Judges.

_____

BEAM, Circuit Judge.

Joe Whatley, Trustee of the wrongful death claimants' trust (WD Trust), appeals the district court's order finding that his claim under the Carmack Amendment, 49 U.S.C. § 11706, against Canadian Pacific Railway was untimely. We reverse and remand for further proceedings.

## I.    BACKGROUND

On June 29, 2013, a train carrying crude oil left New Town, North Dakota, destined for an oil refinery near Saint John, New Brunswick, in Canada.  The bill of lading for the train's cargo designated Western Petroleum Company[1] (WFE) as the shipper, Irving Oil Ltd. as the consignee, and Canadian Pacific Railway (CP) as the carrier.  (CP is the parent company of the other rail defendants, including Soo Line Railroad Company, and we will refer to the defendants collectively as CP).  The bill of lading was drafted and issued by CP and accepted by WFE through an online process.  The online form did not indicate or designate any particular tariffs, price lists or any limitations of liability by CP.  Soo Line transported the train from New Town, North Dakota, to just over the Canadian border.  From there, Canadian Pacific took the train to its rail yard outside of Montreal, Quebec, where it turned the train over to Montreal Maine & Atlantic Railway (MAR) Canada.

Around midnight on July 5, 2013, MAR parked the train on the main tracks and left it unattended.  At some point early in the morning of July 6, 2013, the unattended train began rolling downhill toward Lac-Mégantic, Quebec.  As the runaway train entered Lac-Mégantic, sixty-three of the train's seventy-two tanker cars derailed, spilling crude oil and causing a series of massive explosions. The derailment and subsequent explosions killed approximately forty-seven people and destroyed nearly the entire town of Lac-Mégantic.  Obviously, neither the tanker cars nor the cargo made it to the intended destination and Irving did not receive the shipment.

On August 7, 2013, MAR filed for bankruptcy protection.  On November 5, 2013, WFE sent a notice of damages related to the derailment to CP.  This letter notified CP that it was making a claim under Canadian law, and expressly stated that

---

[1]Western Petroleum is one of several related entities that we collectively refer to as the World Fuel Entities (WFE).

it was not making a claim under the Carmack Amendment. See 49 U.S.C. § 11706 (codifying the exclusive remedy for the liability of rail carriers under receipts and bills of lading). This WFE letter further stated that a Carmack Amendment claim would be sent at a later date. On November 27, 2013, CP responded to WFE by denying the Canadian claim, and by noting that the Canadian claim was indeed not a claim pursuant to the Carmack Amendment. CP also stated in the November 27 denial that,

> even if [WFE] were to submit a proper *Carmack Amendment* claim, CP's liability, if any, could not exceed the value of the lading (crude oil) and would not encompass rail-car damage claims or indemnity against third-party tort or governmental environmental claims. Those matters unquestionably go beyond the value of the property that CP received for transportation.

Appellant's App. at 1944.

On April 4, 2014, WFE sent a notice of claim to CP under the Carmack Amendment for all damages arising out of the derailment, including any amounts that WFE might be liable for to injured parties or for environmental cleanup. CP sent a letter in response to WFE on April 24 acknowledging that the April 4 claim was proper notice for the Carmack Amendment claim, and that WFE's November 5 claim was under Canadian law, but ultimately disallowing the Carmack Amendment claim based upon WFE's alleged negligent conduct.[2]

---

[2]In its November 2013 and April 2014 denial letters, CP references several different tariffs, including ones that allegedly incorporate the Uniform Straight Bill of Lading. Addendum at 21-24; 28-31. However, the actual tariffs or their contents are apparently not in the record. In a submission to a Canadian Minister of the Environment, WFE references a similar tariff which allegedly incorporates the Uniform Straight Bill of Lading. App. at 2246.

Irving sent CP a letter on April 16, 2015, notifying it of potential derailment claims under various laws, including the Carmack Amendment. CP did not respond to Irving's letter. In October 2015, a bankruptcy court in Maine confirmed the MAR bankruptcy plan, and the federal district court in Maine adopted this order. CP withdrew its objections to confirmation of the plan. As may be relevant, the bankruptcy plan tolled any and all applicable limitations periods.

WFE and Irving settled its negligence claims against MAR's Chapter 11 Trustee and the Canadian insolvency monitor for $110 million U.S. dollars and $75 million in Canadian currency, respectively. The Trustee assigned Whatley, the Trustee of the WD Trust, the rights of both WFE and Irving to bring any possible claims against CP under the Carmack Amendment. Whatley brought claims pursuant to the Carmack Amendment in the District Court of North Dakota on behalf of WFE and Irving on April 12, 2016. CP filed an answer to the complaint in May 2016, and a motion for judgment on the pleadings or in the alternative, for summary judgment, in November 2016, seeking to dismiss the Carmack Amendment claims as untimely and for other reasons. In March 2017, the district court granted the motion. The court rejected Whatley's arguments that CP was barred by res judicata from denying the claims because it did not object when the bankruptcy Trustee was considering whether to assign the Carmack Amendment claims to the WD Trust. The court determined that it should consider WFE's and Irving's claims separately, and ruled that WFE's Carmack Amendment claim was untimely because suit was not filed within two years of the denial letter sent by CP on November 27, 2013. The court further held that while Irving had standing to pursue its claim, it was also untimely because it did not provide notice of the claim within nine months of the incident. The district court did not specify whether the ruling was on the pleadings or on summary judgment grounds. Whatley appeals.

## II.    DISCUSSION

A motion for judgment on the pleadings is reviewed de novo and should be granted only if the moving party has clearly demonstrated that no material issue of fact remains and the moving party is entitled to judgment as a matter of law. Elnashar v. U.S. Dep't of Justice, 446 F.3d 792, 794 (8th Cir. 2006). We construe the facts in the complaint as true, and all reasonable inferences are drawn in the plaintiff's favor. Id. When matters outside the pleadings are considered by the court, the motion shall be treated as one for summary judgment. McAuley v. Fed. Ins. Co., 500 F.3d 784, 787 (8th Cir. 2007).

The Carmack Amendment "imposes upon 'receiving rail carrier[s]' and 'delivering rail carrier[s]' liability for damage caused during the rail route under the bill of lading, regardless of which carrier caused the damage." Kawasaki Kisen Kaisha Ltd. v. Regal-Beloit Corp., 561 U.S. 89, 98 (2010) (alterations in original) (quoting 49 U.S.C. § 11706(a)). Its purpose is to relieve cargo owners "of the burden of searching out a particular negligent carrier from among the often numerous carriers handling an interstate shipment of goods." Reider v. Thompson, 339 U.S. 113, 119 (1950). To help achieve this goal, the Carmack Amendment constrains carriers' ability to limit liability by contract. 49 U.S.C. § 11706(c).

As noted, a claim under the Carmack Amendment is the exclusive remedy to recover under a bill of lading. The statute sets forth the following language regarding when claims for recovery can be made:

> A rail carrier may not provide by rule, contract, or otherwise, a period of less than 9 months for filing a claim against it *under this section* and a period of less than 2 years for bringing a civil action against it under this section. The period for bringing a civil action is computed from the date the carrier gives a person written notice that the carrier has disallowed any part of the claim specified in the notice.

-5-

49 U.S.C. § 11706(e) (emphasis added).  Thus, the statute sets forth the floor–the minimum period which a carrier must give the shipper to give notice of a claim under section 11706.  See Louisiana & W. R.R. Co. v. Gardiner, 273 U.S. 280, 284 (1927) (noting that similar language from an earlier version of the Carmack Amendment was not "intended to operate as a statute of limitation" but rather was meant to "restrict[] the freedom of carriers to fix the period within which suit could be brought").  An appendix to the implementing regulation, 49 C.F.R. pt. 1035, on the other hand, appears to set forth a clear time limitation.  See 49 C.F.R. pt. 1035, App. B, § 2(b) (stating that when a carrier fails to deliver cargo, "[a]s a condition precedent to recovery, claims must be filed in writing with the [carrier] . . . within nine months after a reasonable time for delivery has elapsed" and further specifying that a lawsuit must be filed "within two years and one day from the day" the carrier gave written notice denying the claim).  The regulation states that rail carriers "are required to use straight bills of lading as prescribed in Appendix . . .  B."  49 C.F.R. pt. 1035.1(a).[3] The record in the instant matter contains a rather generic bill of lading but there is nothing specific in the bill of lading in this record about whether the parties agreed to the uniform language set forth in the regulation.

Whatley pleaded a prima facie case under the Carmack Amendment by setting forth facts establishing: (a) that WFE delivered the cargo to CP in good order and

---

[3]However, we are perplexed by the fact that this regulation appendix language seems to mandate a nine-month notice and two-year lawsuit ceiling when the unambiguous statute sets a floor for these same time limits.  This makes the regulation completely at odds with the statute; for instance, the regulation *requires* that notice of a claim be given *within* nine months, while the statute clearly states that a carrier may not provide a period of *less* than nine months for filing a claim.  49 C.F.R. pt. 1035, App. B, § 2(b); 49 U.S.C. § 11706(e).  However, the validity of this particular regulation has not been called into question in this case and we express no opinion on the subject.

condition; (b) that the cargo did not arrive; and (c) the amount of damages incurred. See Mo. Pac. R.R. Co. v. Elmore & Stahl, 377 U.S. 134, 138 (1964) (listing elements of prima facie case under the Carmack Amendment). Thus, if the district court erred in finding the claim to be untimely, reversal is warranted at this stage of the proceedings–either judgment on the pleadings or summary judgment. Although Whatley has been assigned the right to bring claims for both entities, because WFE and Irving are somewhat differently situated, we discuss them separately.

## A.    WFE

As stated, it is unclear from the current record whether the parties agreed to the uniform language from the regulation appendix setting a nine-month time period for notice, and a two-year (and a day) time limit for filing suit from the date that the claim was denied. Because of the outcome of our WFE analysis, we will assume that those time limits did, indeed, apply to WFE in this case. Given that assumption, unless the November 2013 exchange of correspondence between WFE and CP can be construed as a claim and a denial under the Carmack Amendment, WFE's claim based upon the claim letter and denial in April 2014 make Whatley's April 2016 lawsuit timely in any event.

Whatley alleges that the claims in the complaint were timely pursuant to the April 4, 2014, notice, the April 24, 2014, response and the filing of this April 12, 2016, suit in federal court. It is clear that WFE timely filed its notice of claim by sending its Carmack Amendment notice on April 4, 2014. The incident occurred on July 7, 2013. April 4 is less than nine months later. Thus, the essence of WFE's dispute centers on the effect of the November 27, 2013, denial issued by CP for WFE's Canadian claims. If, as CP asserts, the November denial was a blanket denial of all claims, including any possible future Carmack Amendment claims, the two-year "limitations" period bars Whatley's claim because it ran in November 2015. If, however, the November 2013 denial did not affect the future, as-yet-to-be-asserted

Carmack Amendment claims, the suit was timely brought within two years of the CP denial in April 2014.

CP alleges WFE's written notice in November 2013 started the two-year clock, and the fact that the November 5, 2013, letter from WFE specifically disclaims any reference to a Carmack Amendment claim does not matter because the notice of claim need not reference the Carmack Amendment; instead, CP asserts, any form of claim denial starts the limitations period, citing Adams Express Co. v. Croninger, 226 U.S. 491 (1913); Gulf Rice Arkansas, LLC v. Union Pacific Railroad Co., 376 F. Supp. 2d 715 (S.D. Tex. 2005); Zarnoski-McCathern v. Eagle Van Lines, No. 04-CV-0155, 2005 WL 292439 (N.D. Tex. Feb. 8, 2005); and Conagra, Inc. v. Burlington Northern, Inc., 438 F. Supp. 1266, 1268 (D. Neb. 1977) ("Any written document which identifies the damaged shipment and indicates an intention to hold the carrier responsible is sufficient."), in support of its arguments.

The two Texas district court cases are quite distinguishable as they involve shippers' attempts to bring state law claims against the carriers, and once the cases were removed to the Texas federal district courts, the courts appropriately found the state claims preempted by the Carmack Amendment. Gulf Rice Ark., 376 F. Supp. 2d at 719; Eagle Van Lines, 2005 WL 292439, at *2. Moreover, the courts in these cases analyzed the specific language of the agreements entered into by the parties to assess timeliness, and therefore these cases do not support the assertion that any form of claim denial will start the running of a two-year limitations period as a matter of law. See Gulf Rice Ark., 376 F. Supp. 2d at 724; Eagle Van Lines, 2005 WL 292439, at *3. And the Burlington Northern case cited by CP is not at all on point; in that case the issue was whether the Carmack Amendment notification needed to be a "[d]etailed documentation of the claim," rather than a simple notice. 438 F. Supp. at 1268. It was not a situation where a claim other than one under the Carmack Amendment was initially alleged or a matter discussing the adequacy of a denial. Id. The Croninger case is one of the first few Supreme Court cases construing the

Carmack Amendment, which was enacted in 1906 as an amendment to the Interstate Commerce Act (although the Amendment has been altered and recodified over the last century). See Kawasaki Kisen Kaisha, 561 U.S. at 96. Among other things, Croninger addressed the shipper's limited recovery options when it elected a lower shipping rate in exchange for releasing its goods at the standard value of the goods. 226 U.S. at 509. While Croninger does stand for the proposition that common law claims against carriers are preempted by the Carmack Amendment, id. at 510-11, nothing in Croninger suggests that a carrier can preemptively deny a Carmack Amendment claim before it has been asserted.

Here we have the unusual situation where the first claim made was pursuant to Canadian law. According to the November letter, WFE was required by Canadian law to submit notice of this claim within four months of the occurrence. WFE's November 5 notice expressly denied that WFE was making its Carmack Amendment claim, and noted that it would do so at a later time. The statute itself defines a Carmack Amendment claim as one being brought "under this section." 49 U.S.C. § 11706(e). Indeed, if WFE had failed to make its April 2014 claim, CP might be arguing that the November notice did not assert a Carmack Amendment claim. See, e.g., Am. Rock Salt Co., LLC v. Norfolk S. Corp., 387 F. Supp. 2d 197, 204 (W.D.N.Y. 2005) (holding that shipper who gave written notice that it *would be* filing a claim "at some unspecified later date" but did not do so within nine months, did not adequately preserve its Carmack Amendment claim). To be sure, American Rock Salt is a bit distinguishable because the "will be filing" notice contained no specifics about damages. Id. at 203. Here, by necessity and due to the operation of Canadian law, damages (in the amount of approximately $4.9 million) were mentioned in the November 2013 correspondence. But equally clear in WFE's November correspondence was the notation that WFE was not yet making its Carmack Amendment claim. When it ultimately gave its Carmack Amendment notice in April 2014, WFE asked for damages in the amount of $6,670,593.27 and also noted that other damages (for property and wrongful death) were yet to be determined. We

think it would be unwise policy, and actually unfair in this unusually complicated multi-national case, to allow the carrier to start the two-year clock when the shipper had not yet broken the huddle. We certainly agree that a denial starts the clock; but according to the statute, the denial must be from a claim brought "under this section." 49 U.S.C. § 11706(e). WFE's November claim was assuredly and explicitly not brought pursuant to 49 U.S.C. § 11706. Accordingly we reverse the district court's grant of judgment on the pleadings (or summary judgment) as to Whatley's claim on behalf of WFE.

## B. Irving

Whatley's Irving claim is more problematic because Irving first gave notice in April 2015. If, indeed, the time limitations presumed in the previous section applied to the bill of lading in this case, Whatley's claim on behalf of Irving could be time-barred. Whatley alleges that since Irving was not a party to the bill of lading, it was not bound by any possible nine-month period for bringing suit. And, Irving alleges it was not required to provide notice of a claim until it was able to calculate its damages with reasonable precision. Because many of the claims against Irving were not alleged until the MAR bankruptcy case took shape, and the bankruptcy plan was confirmed in October 2015, Irving argues that its claim, made in April 2015, was as timely as reasonably possible. Finally, it alleges that the bankruptcy plan tolled any applicable statutes of limitations, including ones that may apply to the Carmack Amendment claims. However, CP points out that Irving cannot both escape the timing rules (that CP alleges are in the bill of lading and tariffs) and reap the benefits of the damages provisions by way of the bill of lading through the Carmack Amendment.

More persuasively, however, Whatley alleges that there is a genuine dispute over the very existence of contractual terms in the bill of lading providing for a nine-month notice period and a two-year suit limitation, precluding both dismissal on the

pleadings or summary judgment as a matter of law. Whatley alleged in the pleadings that the bill of lading did not contain terms setting forth the nine-month notice and two-year period for bringing suit. And as previously noted, the specific language and/or the tariffs themselves do not appear to be in the record on appeal. This omission and factual dispute precludes judgment on the pleadings or summary judgment in favor of CP with regard to Irving's claims. See Shao v. Link Cargo (Taiwan) Ltd., 986 F.2d 700, 707-08 (4th Cir. 1993) (holding that the record was insufficient to determine whether contractual time limits applied to bar the Carmack Amendment claim, and thus, remand was warranted); Tr. of Oral Decision, In re: Maine Montreal & Atlantic Ry., Ltd., Adv. No. 13-01033 (Bankr. D. Me. June 22, 2018) (rejecting argument that the bill of lading governing the same train at issue in the instant dispute automatically incorporated the terms of the uniform bill of lading). Although WFE may have arguably conceded this point, see ante n.2, Irving has not. If on remand it becomes clear that the nine-month notice and two-year lawsuit limits contractually apply, then Irving's Carmack Amendment claim is untimely, unless Irving's tolling arguments, based upon MAR's bankruptcy action, are meritorious. As the district court did not address Irving's tolling arguments below, we leave it to the district court to discern the applicability of any tolling, if necessary.

## III.  CONCLUSION

Accordingly, we reverse and remand for proceedings consistent with this opinion.

GRUENDER, Circuit Judge, concurring in part and dissenting in part.

Over the past several decades, deregulation has revolutionized the law governing the interstate shipment of goods. *See* 22 Richard A. Lord, *Williston on Contracts* § 59:1 (4th ed. 2018). While these changes have given shippers and carriers greater freedom in making contracts, in this case the law mandated the

contractual terms at issue. For this reason, I disagree that there is a genuine dispute over the contractual terms governing Whatley's Irving Oil claim, and I respectfully dissent from Part II.B of the court's decision. Because the two-year limitation on Whatley's WFE claim ran from the April 24, 2014 denial letter rather than the November 27, 2013 denial letter, I agree that the WFE claim is timely and concur in that portion of the court's opinion and judgment.

For shipments subject to the Carmack Amendment, rail carriers must use the uniform straight bill of lading prescribed by federal regulations.[4] 49 C.F.R. § 1035.1; *id.* pt. 1035, apps. A, B; *see also C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 478 (9th Cir. 2000) (explaining that rail and water carriers, but not motor carriers, must use the uniform straight bill of lading). Under § 2(b) of the uniform straight bill of lading, claims involving a failure to make delivery must be filed in writing with the carrier "within nine months after a reasonable time for delivery has elapsed." 49 C.F.R. pt. 1035, app. B. Likewise, § 2(b) permits a lawsuit to be filed "only within two years and one day from the day when notice in writing is given by the carrier to the claimant that the carrier has disallowed the claim or any part or parts thereof specified in the notice."[5] *Id.*

_____

[4]The Carmack Amendment does not necessarily apply to rail shipments. As part of the deregulation of the transportation industry, "shippers and carriers [may] sidestep federal regulation of transportation agreements by entering into private contracts" that are not subject to the Carmack Amendment, 49 U.S.C. § 11706, but instead are governed by 49 U.S.C. § 10709. *Babcock & Wilcox Co. v. Kansas City S. Ry.*, 557 F.3d 134, 138 (3d Cir. 2009); *see also* 1 Saul Sorkin, *Goods in Transit* § 5.02 n.167 (2018). But the parties here have made no argument that this contract is governed by § 10709. On the contrary, Whatley states that his claims arise under § 11706.

[5]As Whatley notes, 49 U.S.C. § 11706(e) requires a minimum of nine months for claims and two years for instituting suits but otherwise allows parties to negotiate limitations periods. Before the ICC Termination Act of 1995, these floors were codified at 49 U.S.C. § 11707(e) and applied to carriers *generally*. For rail and water

-12-

As the court points out, it is not clear from the record whether WFE and Irving Oil expressly agreed to this language. *Ante*, at 7. But because the uniform bill of lading is required by federal law, the time limitation requirements bind the parties regardless. *See Comsource Indep. Foodservice Cos. v. Union Pac. R.R.*, 102 F.3d 438, 443-44 (9th Cir. 1996); *Glenn Hunter & Assocs. v. Union Pac. R.R.*, No. 3:01-CV-7602, 2003 WL 403178, at *1 (N.D. Ohio Jan. 22, 2003) ("The omission of the required language does not relieve the Union Pacific of its effect, because the applicable regulation requires the inclusion of that language in the bill of lading."); 2 Sorkin, *supra* n.1, § 10.02 ("If the contractual limitation of action is provided for in the tariff and regulations, no other notice[] is required to the shipper."). Consequently, I disagree with the court that "there is a genuine dispute over the very existence of contractual terms in the bill of lading" that precludes dismissal of the untimely Irving Oil claim.

Under the uniform straight bill of lading, Irving Oil had nine months after "a reasonable time for delivery has elapsed" to submit its claim to Canadian Pacific, but it did not submit any claim until April 16, 2015. Given that the accident occurred on July 6, 2013, this was well more than nine months after a reasonable time for delivery

carriers, the Interstate Commerce Commission ("ICC") prescribed the uniform straight bill of lading, which mandated the precise time periods described above. *See* Bills of Lading, 58 Fed. Reg. 60797 (Nov. 18, 1993) (to be codified at 49 C.F.R. pt. 1035); Bills of Lading, 9 I.C.C.2d 1137 (1993). Thus, there was no inconsistency between the statute, which generally gave carriers the freedom to impose time limitations by rule or contract subject to the statutory floors, and the regulation, which imposed more stringent standards on rail and water carriers by requiring them to use the uniform straight bill of lading. The ICC Termination Act transformed § 11707 and created separate statutory provisions for different types of carriers. 49 U.S.C. § 11706 (rail carriers), § 14706 (motor carriers and freight forwarders), § 15906 (pipeline carriers). But because the ICC Termination Act contains a savings clause stipulating that previous ICC regulations remain in force, Pub. L. No. 104-88, § 204, 109 Stat. 803, 941 (1995), there is no reason to read § 11706(e) as casting doubt on the continuing validity of 49 C.F.R. § 1035.1.

had elapsed. *See Imperial News Co. v. P-I-E Nationwide, Inc.*, 905 F.2d 641, 644 (2d Cir. 1990) (finding 124 days "more than a reasonable time" for delivery). Whatley tries to excuse Irving Oil's failure to submit a timely claim by arguing that it waited until it could calculate damages with reasonable precision in light of the ongoing bankruptcy proceedings. *See Pathway Bellows, Inc. v. Blanchette*, 630 F.2d 900, 905 n.10 (2d Cir. 1980). But Whatley did not make this argument below. *Gap, Inc. v. GK Dev., Inc.*, 843 F.3d 744, 748 (8th Cir. 2016) ("Ordinarily, this court will not consider an argument raised for the first time on appeal." (internal quotation marks omitted)). And in any event, a party cannot wait until its total financial burden is clear to bring a claim if it reasonably knows the value of the damaged cargo. *See 5K Logistics, Inc. v. Daily Express, Inc.*, 659 F.3d 331, 336 (4th Cir. 2011). Moreover, Irving Oil could at least have filed a partial claim. *See Am. Rock Salt Co. v. Norfolk S. Corp.*, 387 F. Supp. 2d 197, 205 (W.D.N.Y. 2005). Indeed, the fact that WFE filed its claim within a year of the accident undermines Whatley's argument that Irving Oil was unable to file a claim until almost two years had lapsed.[6] *See id.*

I join the court's opinion and judgment on the more difficult question of the timeliness of the WFE claim. And though Canadian Pacific has made several other arguments that might justify dismissal of that claim, I agree that we should allow the district court to consider them in the first instance.

---

[6]For these reasons, the Irving Oil claim would be untimely even if the limitations periods are tolled pursuant to Whatley's interpretation of the bankruptcy plan. Under that plan, statutes of limitations must be tolled from the Execution Date—here March 2, 2015—to the Plan Implementation Date. By the time the tolling period began, however, Irving Oil's claim was already untimely.